ATLANTA AND LAGRANGE RAILROAD COMPANY, plaintiff in error, vs. LOVICK P. HODNETT, defendant in error.

$\begin{array}{cc} 29 & 461 \\ 123 & 7 \end{array}$

[1.] Where a party rescinds a contract on account of fraud and seeks damages also, his measure of damages is, not an equivalent for the violation of parts of the contract by the other party, but it is an equivalent for the hurt he has received from being inveigled into the contract.

[2.] Where a party seeks damages for the violation of a contract by the other party, the measure of his damages is, not what he has suffered by performing his part, but what he has suffered by the failure of the other party.

[3.] Only those sayings of an agent are admissible against his principal, which are spoken concerning his principal's work, and while he is doing the work—*Dum fervet opus.*

In Equity, in Troup Superior Court. Tried before Judge CABANISS, at May Term, 1859.

This was a bill filed by Lovick P. Hodnett, against the Atlanta and LaGrange Railroad Company, to recover of said company damages sustained by reason of the failure and refusal of the company to build the necessary bridges and crossings over said road, on the premises of complainant,

and to erect a depot and turn-out thereon, as said company promised to do, in consideration that complainant would grant and convey to it the right of way through his said land. The bill further seeks to recover compensation for injury and damage done to his plantation, and for losses, trouble and expense sustained and incurred by him, on account of obstructions to his roads in and through his plantation, and of ponds and lagoons caused by the construction of said road.

Defendant answered the bill, denying its material allegations, and insisting that the deed conveying the right of way, expressed the true and only consideration for the grant thereof by complainant.

The jury found for complainant thirty-four hundred and seventy-nine dollars. Whereupon defendant moved for a new trial upon the following grounds:

1st. Because the Court erred in not dismissing said bill on motion of defendant.

2d. Because the Court erred in admitting parol evidence to show any consideration for the deed of complainant to defendant, other than expressed in said deed; and also in admitting evidence tending to prove a contract on parol between the parties.

3d. Because the Court erred in permitting the witnesses to testify to their opinion of the damages in the form and upon the basis disclosed by the brief of the evidence.

4th. Because the Court erred in admitting all and every part of the evidence tending to show the value of the right of way conveyed by complainant's deed.

5th. Because the Court erred in admitting all and every part of the evidence tending to prove the sayings, speeches or declarations of Judge Hill, or any other person.

6th. Because the Court erred in admitting the evidence of Samuel Curtright, and particularly that part of the same

showing an admission by Douglass of an obligation upon defendant to build a bridge, &c.

7th. Because the Court erred in not ruling out all evidence of the contents of any letter writen by Judge King.

8th. Because the Court erred in not withdrawing from the jury, and ruling out, upon motion of defendant, all evidence as to the sayings, speeches or declarations of Judge Hill.

9th. Because the Court erred in not compelling complainant to elect, before counsel on either side addressed the jury, whether he would proceed for a recision of the alleged contract, or for the enforcement thereof.

10th. Because the Court erred in refusing to charge the jury, as requested by defendant, that in estimating complainant's damages for breach of contract, they (the jury) should not include as a part thereof the value of the right of way conveyed by the deed.

11th. Also, on refusing to charge the jury, as requested, that nothing could be allowed in damages for failure to furnish free ticket and turn-out; and in charging in place thereof in general terms that no damages not proven could be allowed.

12th. Also, in declining to state to the jury, at defendant's request, what is the measure of damages in this case; and in stating and on charging that the jury, in the event that they found for complainant, should allow all damages proven to have been sustained by complainant in performing his part of the contract, and in consequence of a failure of defendant to perform its part.

13th. Also, in refusing to charge the jury, at defendant's request, that the measure of damages in this case, in the event that they should find for complainant, is the cost of building and keeping up the bridge and crossing to the present time, during the period the defendant has been in default.

14th. Also, in refusing to charge, as required, that it was the duty of complainant to use reasonable diligence and

prudence to prevent damage to himself by reason of defendant's failure to build and keep up the bridge and crossing; and that if he could have built and kept up the same at less damage and expense than would accrue in consequence of the absence of said bridge and crossing, it was his duty to have done so.

15th. Because the verdict of the jury is contrary to law, contrary to evidence, and strongly against the weight of evidence.

16th. Because the damages found and decreed by the jury are excessive.

The Court refused the motion for a new trial, and defendant excepted.

FERREL & BULL; E. Y. HILL; and OVERBY & BLECKLEY, for plaintiff in error.

B. H. HILL, and B. H. BIGHAM, contra.

By the Court.—STEPHENS J. delivering the opinion.

[1.] Mr. Hodnett by his bill, makes two cases. The first is, that his deed of the right of way, was procured by *fraud ;* and his specification of fraud is that the company induced him to make the deed by certain *parol* promises, which, *from the beginning*, they fraudulently intended to break and which they have never performed. Is this a case entitling him to relief? Does it not fall under that wise and well-settled rule which excludes *parol* evidence intended to vary a written contract, by either taking from it or *adding* to it? Does not this rule require that all *promises* on which the parties *rely* should be put into the writing, when there is a writing, professing to set forth the contract on *both sides ?* Where there is no *reliance* or confidence, there can be no fraud. The question I ask is, whether all *promises* on which the parties

Atlanta and LaGrange R. R. Co. vs. Hodnett.

rely must not be in the writing. I do not mean *representations*. These last relate to the truth of existing or passed facts, and not to engagements in the future; but promises, if they are to have any efficacy, must have it in the future; they are an undertaking, a *contract* and the rule requires *all* the *contract* to be in the writing. What of the contract is not there, dont exist; it is waived, discarded, merged. This view I suggest as a difficulty in my own mind, and not as a decision of the Court nor as a settled opinion of my own. So far the bill. How does this branch of the case stand on the proof? The only evidence that these promises were false and fraudulent in their inception, is the fact, that the company being able to perform them, have not done so. It was said in the argument, that the jury must be left to infer from the circumstances of the case, whether or not these promises were from the first, intended to be performed, or only made to deceive and defraud. But are there any "circumstances" about the case, except the power to perform coupled with a failure? Is this enough to *authorize* the conclusion? To say so, seems to me to be a mere *evasion* of the rule to which I have just referred. A man receives promises, acts on them, relies on them, and then puts in writing the contract on both sides, but leaves these out; *intentionally* leaves them out. The rule debars him from *enforcing* them, but he gets the full benefit of them notwithstanding, for he has only to show that they were made and would have been, but in point of fact, have not been performed. Does this make a case for relief? This view also, I propound as a difficulty, and not as a settled opinion. It is a point on which the Court desired to see authority, but none was produced. But if relief, *what* relief does this case authorize? Surely not damages for a *violation of the contract*. The case now under consideration is that the *contract* is truly contained in the writing, but was fraudulently procured by false dealing at the time. The effect of this, would be to *vitiate*, to *avoid* the contract, and to give damages for the injury done by its performance, and

not by its violation. In this view, there is no violation of the contract. When a man has been inveigled into a contract by fraud, he may rescind it or adhere to it as he pleases. If he adheres to it, he takes it as *it is* and not as he *might have made it*, with different information. If he rescinds it, he is entitled to compensation for all the hurt he has received *from the contract ;* not from its violation. And it might happen, that he would be entitled to no damages at all, (except nominal,) for it might well happen that the contract, *though* procured by fraud, does him more good than harm. Mr. Hodnett's damages, in this view of his case, would be something or nothing, according as the railroad has done his plantation more harm or more good ; considering on the one side the inconvenience to him in carrying loads from one part of his plantation to another, the ponding of his land, and the deprivation of that part of his land covered by the right of way ; and on the other side, the increased facilities of reaching a market, and of personal travel, the draining and reclaiming some of his swamp lands, and the general enhancement of the value and price of lands, his included. In other words, would his plantation bring more money as it is, or with the *railroad destroyed ?* The rule of damages laid down by the presiding Judge, is not conformable to the proper measure in this view of the case. But Mr. Hodnett presents another case. He says that the contract is not all in the deed, but that the *parol* promises of the company form a part of it and he asks damages for a violation of that part of the contract. To me, this seems a clear and palpable violation of the rule excluding parol evidence to vary a written contract. I am aware that the rule has been so construed, or to speak the plain truth, so *relaxed*, as to allow *parol* proof of an additional or different consideration for a deed, when that expressed in the deed itself, is a mere pecuniary one. But the relaxation has gone no further, so far as I am aware, and I trust it never will. Here the deed is an indenture, professing to set forth the contract on *both sides.* Hodnett

conveying the right of way, and the company (not paying him mere money as a consideration lent) engaging to run their road through his land. Surely he was bound by the rule I have mentioned, to put into the writing all the stipulations on which he relied as a part of the *contract*. If the rule dont require this, it is no rule, and the Courts ought to say frankly that they do not recognize it. This case seems to me, to be put out of all doubt by the *condition* in the deed. Out of all the promises which he says the company made, he *chose* to set down in the writing, but the one that they should run their road through his land, and he put it as a condition in the deed, that if they should fail in *that* promise, the contract should be void, but if they should perform *that one* promise, the contract should be good. They have performed it. He admits too, that the deed was written exactly as he intended it to be, and as it was agreed it should be. He does not pretend that it ought to be *reformed*, so as to conform to what the parties intended it should be; but he seeks to superadd to it other promises, other conditions lying in *parol* only, and never meant to be in writing. In presenting this view, I do not speak for my colleagues, for I understood they were not satisfied on it. But we were all agreed that the rule of damages as laid down by the presiding Judge, whether applied to this view of the case, or to the first one, is erroneous. Indeed, the presiding Judge seems to have *mixed* the two views together in fixing a measure of damages. He told the jury they must find all the damages which Hodnett had sustained by his *performance* of the contract, and also, all he had sustained by the company's *violation* of it. Now I think it is clear, that if he is entitled to damages at all, he must either *repudiate* the contract and ask damages for having been inveigled into it; not for its violation; or else, adhering to the contract, he must ask damages for the company's violation of it, and not for his own performance of it. If he adheres to the contract he is *bound* to perform it, and certainly is entitled to no damages for having done

so. His remedy in this case is, to make them perform as he has done, or pay him an *equivalent* for their failure. And in this view he is not entitled to any compensation for his right of way. *That* passed by the *contract,* and if the contract stands and is *enforced,* they must pay for it, not what it was worth, but what they *agreed* to pay, or having failed in this, they must pay an equivalent, not for the right of way, but for what they agreed to do, but have failed to do. We think too, in this view of the case, (if he is entitled to relief at all) a Court of Equity may look to the future, and award such damages as will enable him to do for himself, those things which the company agreed, but have neglected to do for him; that is, to give him an equivalent for the future performance, as well as the past failure.

[2.] What is such an equivalent? We think it is the cost which a discreet man would, *in Mr. Hodnett's circumstances and situation,* have incurred, in remedying the inconveniences which the company engaged to obviate in the past, together with such a sum as will obviate them in the future. For myself, I will add that there is a clear limit beyond which it seems to me the damages can not go. What is Hodnett's whole place worth, with no obstruction to communication between all its parts? Then, with the two hundred acres beyond the railroad cut off, what would the remaining part be worth? This difference, lessened by what the two hundred acres in a separate state would bring, forms a limit beyond which the damages can not go, for if the cost of keeping up communication between the different parts would be more than this, a discreet man would have abandoned the attempt to keep up such communication, and have sold the two hundred acres. It may be said that would leave him too little land for his force, or would leave him without timber, &c.; but all these are elements in estimating what the remaining land would be worth with the two hundred acres cut off. I do not say that the damages ought to come up to this limit, for it may well be, that they do not

When he undertook to remedy the inconvenience, he is entitled to charge, not what his remedy actually cost him, for his remedy may' have been a very unwise and absurd one, but what would have been the cost of the *best* remedy which his circumstances and situation allowed.

[3.] The admissibility of complainant's evidence, is the only other point needful to be mentioned. Of course, none of the *parol* evidence touching the sayings of the company's agents was admissible, if the doubts and difficulties which I have suggested against Mr. Hodnett's whole case, are well founded. But assuming even that they are without foundation, we all think there was error in admitting this testimony. The rule we think is clear, that only those sayings of an agent are admissible against his principal, which are spoken while he is doing his principal's work, and are spoken concerning the very work he is doing. *Dum fervet opus.* The principle on which they are admitted at all, is that they constitute a part of the *res gestæ ;* a part and parcel of the very thing the agent is doing when he utters them. The only agent whose sayings in this case are admissible, is McLendon, who *took the deed. That* was the main fact, and whatever was done or said at that time, in relation to *that matter,* stands on different grounds from the sayings of others. And we think too, that as McLendon and Hodnett were both in the public meeting and went right out of it, and executed the deed, McLendon may be considered as having *adopted* the promises which he had heard, and which he knew Hodnett had heard and made for the railroad company. Hence, we think the sayings in that meeting were admissible, if indeed any *parol* evidence was admissible. But we think all the other *parol* evidence of agents' sayings was clearly inadmissible under any view.

[4.] I have not considered all the assignments of error *seriatim,* but I have adverted to principles which cover them all. Counsel are now informed at what points the pressure lies, and we trust that they will another time produce to us

authority on the points where I have indicated it to be needed, should this case ever come before this Court again.

Judgment reversed.