## AMERICAN PURE FOOD COMPANY v. G. W. ELLIOTT AND COMPANY.

### (Filed 8 December, 1909.)

**1. Contracts—Fraud—Parol Evidence.**

It is competent by parol evidence to show fraud in the procurement of a contract for the sale and delivery of goods, whether the contract itself is oral or written.

**2. Contracts—Sale of Goods—Principal and Agent—Declarations— Res Gestae.**

In an action upon contract for the sale and delivery of goods, it is competent for the defendant to show, *as a part of the res gestae*, the declarations of the plaintiff's agent at the time of the sale, as tending to establish his defense of fraudulent representations to avoid the contract.

**3. Contracts Voidable—Fraud and Deceit—Counterclaim—Void in Toto.**

In an action upon contract for the sale and delivery of goods the defendant may not avoid his contract for fraud and recover damages upon a counterclaim measured by the contract, for having elected to treat the contract as void as to plaintiff's cause of action, it will be regarded as void in toto.

**4. Contracts—Fraud and Deceit—Special Damages.**

In setting aside a contract for the sale and delivery of goods for fraud, while the defendant cannot recover on a counterclaim measured by the contract, he can recover special damages to his reputation or business arising from the sale of an inferior or spurious article directly and proximately caused by plaintiff's tort, if shown by proper evidence.

**5. Same—Evidence—Questions for Jury.**

To recover damages upon a counterclaim set up in defense to an action for the sale and delivery of goods alleged to have arisen from plaintiff's fraud and deceit in its procurement, it is necessary for the defendant to show the particulars of his injury so as to enable the court to see if they come within the recognized principles of the law and are allowable; and an estimate by defendant that he has been damaged in a certain sum, at least, is too vague, indefinite and uncertain, and invades the exclusive province of the jury by permitting him to assess his own damages.

**6. Contracts—Fraud and Deceit—Special Damages—Pleadings— Evidence Restricted.**

Evidence that defendant has been damaged in a certain sum by reason of plaintiff's fraud and deceit in inducing a contract for the sale and delivery of goods, must be taken in connection with the allegations relating to the character of the damage alleged in his counterclaim; and when defendant alleges his damages to have arisen from a loss of profits, his evidence that he has been damaged in a certain sum must be taken to mean by the loss of profits.

**7. Contracts—Fraud and Deceit—Samples—Loss of Profit—Proximate Cause.**

Profits that would have been made had the goods sold and delivered come up to the samples shown and representations made at the time of sale by the salesman, may not be recovered when they are too speculative or remote, the rule being that they must proximately and naturally flow from the tortious act, and are reasonably definite and certain.

**8. Same—Evidence.**

To recover damages alleged by defendant by way of counterclaim for alleged profits lost, and to have arisen from plaintiff's fraud in inducing a contract for the sale of baking powders, to-wit: that the powders sold were fraudulently represented as being as good as the Royal Baking Powder, it is necessary that the evidence disclose a basis upon which the jury can estimate the alleged profits lost, the cost price of the genuine article of Royal Baking Powder, or the average sales of the article in his business by the defendant, or the profits usually made, or the demands therefor.

APPEAL from *Long, J.,* July Term, 1909, of RANDOLPH.

Civil action, commenced before a justice of the peace and tried upon appeal.

These issues were submitted, without objection:

1. "Is the defendant indebted to the plaintiff, as alleged in the complaint, and, if so, in what amount?" Answer: "No."

2. "Did the plaintiff's agent, at the time of the sale, falsely represent and warrant the powders to be the same kind and quality as the Royal baking powders?" Answer: "Yes."

3. "Did the said agent, at the time, know the representations as to kind and quality of the goods to be false, and were they made with intent to deceive defendant?" Answer: "Yes."

4. "Did the defendant rely and act upon the said representations, and was he deceived and induced thereby to make the order?" Answer: "Yes."

5. "What amount, if anything, is defendant entitled to recover on his counterclaim?" Answer: "Fifty dollars."

The court rendered judgment against the plaintiff for the sum of fifty dollars, from which judgment plaintiff appealed.

*Thomson & Hoyle* and *John T. Brittain* for plaintiff.
*Hammer & Spence* for defendant.

BROWN, J. The plaintiff sues to recover the sum of $187.50 for five hundred cans of baking powder sold and delivered to defendants. The defendants appealed to the Superior Court from the judgment of the justice of the peace, and, while the cause was there pending, they, by permission of the court, filed a written answer, setting up a counterclaim.

The answer avers that the defendants were induced to purchase the goods upon the false and fraudulent representations of the agent selling them, and that the defendants repudiated said contract after selling a few cans, and, ascertaining the worthless character of the goods, refused to receive them. The defendant further avers: "That the representations made by the plaintiff, through its agent, were false, and said baking powder was, at most, only a cheap alum baking powder, which was absolutely worthless to this defendant, and he was greatly damaged by attempting to handle said baking powder at all; that by reason of the false guaranty and the deceit of the plaintiff, through its agent, the defendant was greatly damaged in its custom in selling baking powders, and also lost the profit that he would have obtained, to-wit, the sum of $50."

There are ten assignments of error pointed to the evidence upon the second, third and fourth issues, which are without merit and do not require discussion at our hands. Suffice it to say that it is immaterial whether the contract was in writing or verbal. It is, in either case, competent to offer parol evidence that the buyer was induced to enter into the contract by false and fraudulent representations as to the quality of the goods. In this case the goods were not present and there was no opportunity for inspection, even if such a thing were practicable as to a commodity packed in sealed cans.

It is also competent to offer the declarations of the agent of plaintiff at the time of the sale. They were part of the *res gestae* and are as competent as if made by the employer himself.

These principles are elementary and need no citation of authority to support them.

We think his Honor properly refused plaintiff's prayer for instruction, and that there is no merit in the exceptions to the charge, except upon the fifth issue, relating to damages, which instruction is: "If you answer the second, third and fourth issues 'Yes,' in behalf of the defendant, and you come to pass upon the fifth issue, the court instructs you that his damages for the breach of contract would be such damages as is found to be the difference between the alleged contract price and the market value at the time when and the place where the goods should have been delivered by the terms of the contract. The burden of this fifth issue is upon the defendant to satisfy you of the truth of it by the greater weight of the evidence. There is evidence here that has been offered on both sides as to the value of these goods at the time they were delivered and at the place delivered, the evidence of the defendant being to the effect that these goods

were not worth more than about ten cents a can, and the evidence of the plaintiff being to the effect that the goods were worth all that they were sold for at the time, $187.50. The defendant, however, has not set up its damages for more than $50 in any event, and does not demand any more damages than $50."

We think, in view of the charge upon the first issue, that this is an erroneous conception of the measure of damage in this case. The court had already instructed the jury: "But if you find, at the time that the contract was made, that the defendant company's agent did falsely represent and warrant the powders to be the kind and quality of the Royal baking powders, and that these representations were false, to the knowledge of the agent of the plaintiff company making these representations, and that this defendant company relied upon these representations and was deceived thereby and induced to make the contract, then, under the first issue, your answer would be 'Nothing.'" This charge was correct only on the assumption that the contract had been rescinded and repudiated by the defendants *in toto,* and that they had refused to take the goods when they discovered the fraud. When these goods were received by the defendants and they discovered the fraud, they had the right either (1) to refuse to accept the goods; (2) if purchase money had been paid, to return the goods and sue for the money paid; (3) or they may plead the breach of warranty in diminution of the price. *Mfg. Co. v. Gray,* 111 N. C., 93; *s. c.,* 124 N. C., 322; *Hadley v. Baxendale,* 9 Exchq., 341; Sedg. on Dam., 291. The evidence of the defendants shows that they elected to take the first course. They aver in their answer that they repudiated the contract at once, and Elliott testifies that he refused to receive the goods.

This being true, the defendants, upon their counterclaim, cannot sue on the contract for its breach, but can recover special damages only. Therefore his Honor's charge is erroneous. If the defendants had elected to keep the goods and had pleaded damages for the breach of the contract in diminution of the price, the charge would have been correct.

It is generally held that rescission of a contract of sale for fraud is a waiver of a right to recover damages, as an action for damages proceeds upon an affirmance of the contract. 14 Am. & Eng. Enc., 170; *Roome v. Jennings,* 2 Misc. N. Y., 259. But this is not always true. Rescission will bar a recovery of damage when the only damage sustained is in not getting what was bargained for, and no special damage has been sustained.

According to the weight of authority, if special damage has been sustained, so that the party defrauded is damaged, *notwith-*

*standing* the rescission, his rescission of the contract will not bar a recovery of such special damage. *Railroad v. Hodnett,* 29 Ga., 461; *Nash v. Ins. Co.,* 163 Mass., 574; *Warren v. Cole,* 15 Mich., 265; *Lenox v. Fuller,* 39 Mich., 268; 14 Am. & Eng., 170.

It is said by our present Chief Justice that "Special damages are rarely allowable, except in cases of fraud in inducing the contract." *Mfg. Co. v. Gray,* 111 N. C., 93. They must be specially pleaded, and must, of course, be proven as laid. *Same case,* p 94.

What are the special damages pleaded by the defendants in their counterclaim?

1. That their business was greatly damaged by attempting to sell the said baking powder before discovering the fraud.

Inasmuch as the defendant has elected to repudiate the contract, and therefore cannot sue on it, the basis of his counterclaim must of necessity lie in tort. Consequently, if by the fraud and deceit practiced upon defendants, their reputation and business have been injured by the sale of a few boxes of the spurious article before they discovered its true character, and repudiated the contract, that is an injury flowing directly from the tort, for which defendants can recover, if the claim is supported by evidence from which the jury can fairly estimate the damage sustained.

The record is extremely meager as to evidence of damage, the whole of it being as follows: "Q. How much were you damaged, if any, by this transaction? A. I have been damaged right smart; I could not tell exactly. Q. Give an estimate. A. I have been damaged at least fifty dollars, I know."

It is manifest that this extract from the record contains no facts from which the jury can estimate the damages done to the defendant's business. The defendant so testifying cannot be permitted to assess his own damage. That is the exclusive province of the jury. He must state the particulars of his injury, so the court can see if they come within the recognized principles of the law and are allowable.

Damages must be reasonably certain, both in their nature and in respect to the cause from which they proceed. 1 Sutherland, sec. 53.

If the evidence of injury to defendant's business is so vague, indefinite and uncertain that it does not furnish a basis for the estimating of damages by the jury, then they cannot be recovered. *Hart v. Railroad,* 101 Ga., 188; *Fletcher v. Packing Co.,* 58 N. Y. Sup., 612; 1 Sutherland, sec. 53.

The party injured cannot be permitted to simply "guess at it."

The defendant does not state that any portion of his estimate of fifty dollars was injury to his business, nor does he testify that his business was injured at all.

The second ground of special damages, as pleaded, is that defendant "lost the profit that they would have obtained, to-wit, the sum of fifty dollars." Thus we see that the defendant's estimate of fifty dollars is based solely upon loss of profits, and not injury to their business. There are three reasons why profits upon the contract cannot be recovered upon the facts as presented in this record:

First: The defendants do not seek to recover for a breach of the contract, for that would be a suit upon the contract. They ask to set aside the contract and to be relieved themselves from its performance, upon the ground that they were induced to enter into it by fraud, and for damages flowing from the tort committed. They cannot treat the contract entered into by themselves as void on the ground of fraud, and at the same time as in force for the purpose of recovering damages upon the contract for loss of prospective profits growing out of its nonperformance. 14 Am. & Eng. Ency., 170, and notes.

In reference to a contract, relating to an exchange of personal property, which was sought to be set aside on the ground of fraud, the Supreme Court of Maine says: "Such a contract is not absolutely void, but voidable only, at the election of the party defrauded. The party having such election must rescind the contract wholly; he cannot consider it void to reclaim his property and at the same time in force for the purpose of recovering damages for its breach." *Junkins v. Simpson,* 14 Me., 364. *Lord Ellenborough* held "that when a contract is to be rescinded at all, it must be rescinded *in toto." Hunt v. Silk,* 5 East Rep., 449. To same effect is *Shaw, C. J.,* in *Rowley v. Bigelow,* 12 Pick., 307. *Mellen, C. J.,* says, in *Seaver v. Dingley,* 4 Greenleaf, 306: "But the law does not allow a party to rescind a contract and at the same time make use of it as subsisting for the purpose of claiming damages for its breach."

See, also, *Parsons, C. J.,* in *Kimball v. Cunningham,* 4 Mass., 502; Am. & Eng. Ency., *supra.* As profits upon a contract necessarily flow from it, and must be gauged by its terms, when the purchaser elects to treat the contract as void, and to return the property, he is debarred from recovering possible prospective profits as damages arising from its breach, although he may recover damages for the injury done him in his business by the fraud and deceit practiced upon him. A second reason why profits cannot be recovered under the evidence here is that they

are too uncertain and speculative, even if defendant had affirmed the contract and was suing for its breach.

There is no evidence that defendants had contracted to sell any of the genuine Royal baking powder, or that profits were reasonably certain to have been realized had the contract been performed. There are numerous authorities to the effect that damages recoverable for breach of contract include "profits which the party *certainly* would have realized but for the other's fault, though speculative or contingent profits are not recoverable." *Griffin v. Colver* (N. Y.), 69 Am. Dec., 718. This is a leading case on the subject, and in the elaborate notes of *Judge Freeman* the subject is fully considered.

This Court has held that where profits are lost by the tortious conduct of another, proximately and naturally flowing from his act, and are reasonably definite and certain, they are recoverable. *Johnson v. Railroad,* 140 N. C., 574. That decision is based upon evidence showing that the plaintiff had subsistent contracts for his goods outstanding, which he had undertaken to fill at a fixed price, so that his prospective profits could be definitely ascertained.

In the opinion of the Court, *Connor, J.,* says: "This, of course, excludes any evidence in regard to profits not covered by contracts. They would be speculative. There might be no demand for crates, prices might decline, etc."

A third reason is that the evidence discloses no basis whatever upon which the jury can estimate the profits with any sort of accuracy. We have no testimony as to the cost price of the genuine article of Royal baking powder or of the average sales of the article by the defendants in their business, or of the profits usually made, or whether there was any demand for it. In his evidence the defendant Elliott states substantially that he did not wish to buy the goods at the time, although he thought the article was genuine, but that he was "overpersuaded by the agent." It is fair to presume from this that there was no demand for it, or that defendants were overstocked with baking powder.

We are of opinion that there should be another trial, guided by the principles as laid down in this opinion.

New trial.

WALKER, J., dissents.