JOHN J. STEWART AND WIFE, GRACE M. STEWART, v. SALIS-BURY REALTY AND INSURANCE COMPANY AND B. H. HAMILTON.

(Filed 24 April, 1912.)

1. **Deeds and Conveyances—Fraud—Misrepresentations in Values —Caveat Emptor.**

While in proper instances the doctrine of *caveat emptor* applies to transactions in lands, relief will be afforded when it is shown that the buyer of real estate in a town where he was unacquainted with such values reasonably relied upon a false representation of an expert therein, in a sale made by him, that the owner had recently bought the property at $3,500, when in point of fact he had only paid $2,750 for it, and it is fairly to be inferred that the false representation was made with the intent to deceive the purchaser and induce him to believe he was making a good trade.

2. **Same—Rescission—Damages—Election of Purchaser.**

When misrepresentations of values are made in the sale of lands with a fraudulent purpose, calculated to and which reasonably did deceive the purchaser, and were relied on and acted upon by him, it will avoid the conveyance, or leave the purchaser to his redress in damages unless by his conduct he has waived the latter remedy by electing to avoid the transaction.

3. **Deeds and Conveyances—Principal and Agent—Acceptance of Benefits—Waiver.**

The owner of lands who has accepted the benefits of a sale thereof induced by the fraudulent representation of his sales agent, acting within the apparent scope of his authority, is bound by the transaction, and the doctrine of *respondeat superior* applies.

STEWART *v.* REALTY CO.

4. **Deeds and Conveyances — Values—Misrepresentations—Fraud— Caveat Emptor—Measure of Damages.**

When it is shown that a vendor of lands has fraudulently made a sale thereof by representing that he had recently paid $3,500 for the property, when in point of fact he had only paid $2,750 for it, and this formed an inducement to the transaction, the measure of damages is the difference between $2,750, the price the owner had actually paid, and $3,500, the price he represented he had paid, without regard to the actual value of the property, unless by his conduct the purchaser has elected to rescind the conveyances.

5. **Same—Rescission—Waiver—Measure of Damages.**

The plaintiff purchased of the defendant certain lands and gave his note secured by mortgage thereon for the purchase price. Thereafter he demanded cancellation of the note and mortgage and offered a deed reconveying the lands, upon the grounds of "misrepresentation and deception," and then brought his action alleging fraud in the transaction : *Held*, the demand of plaintiff was a waiver of his right to recover damages upon the question of values, and having elected to rescind the transaction, he would only be permitted to recover any money actually paid upon it, and interest thereon.

6. **Deeds and Conveyances—Fraud—Election—Waiver, Effect of.**

An election by the purchaser to rescind a fraudulent sale of land, when once made, with knowledge of the facts, between coexisting remedial rights, which are inconsistent, is irrevocable and conclusive, irrespective of intent, and constitutes an absolute bar to any action, suit, or proceeding, based upon any remedial right inconsistent with that asserted by the election.

APPEAL from *Justice, J.,* at January Special Term, 1912, of ROWAN.

Civil action. At the conclusion of the evidence the court sustained a motion to nonsuit, and the plaintiffs appealed. The facts are stated in the opinion of the Court.

*Theo. F. Kluttz and R. Lee Wright for the plaintiffs.*
*Stahle Linn and T. C. Linn for the defendants.*

BROWN, J. The plaintiff alleges in his complaint, and offers evidence tending to prove, that about 13 October, 1910, he contracted to purchase from the defendant company, through its salesman and agent, the defendant Hamilton, certain real estate

in Salisbury, N. C., called the Trexler property; that after much negotiating the defendant agreed to sell the property to the plaintiffs at an advance of $300 above the cash price, which offer the plaintiffs accepted.

Plaintiff further states that the agent Hamilton told him that the company had recently paid $3,500 cash for the property to Trexler; that the plaintiff was ignorant of real estate values in Salisbury, and, relying upon the statements and representations of Hamilton, closed the trade; that a deed was executed to plaintiff Grace M. Stewart, wife of John J. Stewart, and they executed note and mortgage to the company for the $3,800 on the Trexler property and additional landed security.

Plaintiff avers, and offers evidence to prove, that the defendants paid only $2,750 for the Trexler property, and that its agent intentionally and falsely misrepresented the cost price of said property for the purpose of cheating and defrauding plaintiff.

The defendants contend that the evidence of fraud is insufficient to carry the case to the jury, and that the doctrine of *caveat emptor* applies.

We recognize the general doctrine that the rule of *caveat emptor* is applied by the courts, even in respect to sales of land, when the buyer and seller have equal opportunity of knowledge, and where the buyer makes examination, and when the representations concern the value of land, its condition, or adaptation to particular uses, which are largely matters of opinion, and estimates as to which men may differ. Cooley on Torts, sec. 487; Smith on Frauds, p. 191.

The evidence offered, we think, is potent enough to take this case out of this rule.

Taken in its most favorable light for the plaintiffs, it shows that the purchaser was ignorant of real estate values in Salisbury, that he was dealing with an expert, that he relied upon the representations of such expert as to the actual price recently paid for the property, that such price was falsely and fraudulently represented to be $750 more than the true cost, and it is fairly to be inferred that such false representations were made with intent to deceive plaintiff and induce him to believe he was making a good trade.

It is true that a purchaser will not be allowed to rescind his trade, or recover damages, simply because he has not made a good one; but where he has been tricked into making a trade he otherwise would not have made, the law generally affords some measure of relief.

We think the evidence in this case tends to prove that the misrepresentations were made by Hamilton, the agent of defendant company; that they were false and made with a fraudulent purpose; that they were calculated to and did deceive; and that they were relied on and acted upon by the plaintiff. *May v. Loomis,* 140 N. C., 352; *Tarault v. Seip,* 158 N. C., 363; *Whitehurst v. Insurance Co.,* 149 N. C., 276.

The evidence furthermore tends to prove that Hamilton was the agent of the codefendant; that he was acting within the scope of his agency, and that his principal reaped the benefit of, and therefore should be bound by, his acts. *Brite v. Penny,* 157 N. C., 110; *Bowers v. Lumber Co.,* 152 N. C., 607.

If the facts be found by a jury under appropriate issues in favor of the plaintiffs, what remedy have they?

The learned counsel for the plaintiffs argued with much force that the plaintiffs can recover in this action the sum of $750, the difference between the actual cost of the property and $3,500, its fictitious cost, and that this is true, notwithstanding the fact that the plaintiffs have offered no evidence tending to prove that the actual value of the property was less than $3,800, the price which the plaintiffs were induced to pay.

This position finds strong support in a case decided by the Supreme Court of Maryland, which appears to be on all-fours with the one at bar. *Pendergast v. Reed,* 29 Md., 398.

In that case A fraudulently represented the cost price of a vessel to have been $34,000, and sold a part of the vessel to B upon that basis. B subsequently learned that the cost price of the vessel was much less than that which A represented it to have been. There was no evidence of the actual value of the vessel. B retained his interest, and sued for damages. The Court unanimously held that B was entitled to recover from A for the overpayment, even if the actual value of the share purchased equaled or exceeded what it would have been had the representation been true.

In the opinion it is said: "It is not simply the case of a false affirmation by a vendor, concerning the value of the thing sold, where information on the subject was easily within the reach of the vendee, and where the law would regard it the folly of the latter to credit the assertion, but of a false representation of a material fact known to the defendant, and by means of which the plaintiff was induced to part with his money. The very essence of the contract here stated was a purchase for certain considerations of one-eighth of the vessel at its cost price to the defendant, and a false representation of this price, inducing the plaintiff to buy, worked an injury to him, for which he is entitled to recover, even if the actual value of the share purchased equaled or exceeded what it would have been had the representation been true. He had the right to all the profits of his purchase and contract as he made it, and it is no answer to his action to say, though the representation was false, yet the actual value of the thing sold is equal to what such false representation induced him to pay for it."

This case is cited with approval in notes in 18 Am. St. R., 555; also, *Walker v. Pike County,* 139 Fed., 609; *Garrett v. Wannfried,* 67 Mo. App., 437. The same principle is recognized in *Teachout v. Van Hoesen,* 76 Iowa, 113; L. R. A., 664, and notes; *Fell v. Bell,* 205 Ill., 213; *Thompson v. Newell,* 118 Mo. App., 405. See, also, 20 Cyc., p. 551 B and notes; also case almost identical with the one at bar, *Mason v. Thornton,* 84 S. W., 1048.

It would seem upon the authorities that the plaintiffs, if the facts be as appear in the evidence introduced by them, are entitled to recover the $750, unless they have elected to rescind the contract of sale. There is no doubt in our minds that upon such facts the plaintiffs would have the right to rescind the contract, have the note and mortgage canceled, and restore the property to the defendant.

But we find it averred in the complaint that immediately upon discovering the alleged fraud, the plaintiffs made demand upon the defendant for rescission and cancellation of the contract, and the surrender of their note and mortgage, and also tendered to the defendant company a deed for the premises, ex-

ecuted by the plaintiffs. At the same time the plaintiff served upon the defendants the following notice:

SALISBURY, N. C., October 24, 1910.

*To the Salisbury Realty and Insurance Company:*

Take notice, that I hereby demand a rescission and cancellation of the house and lot contract—a cancellation of the note and mortgage I gave you, and that you accept a deed from me and wife for the house and lot you deeded us, or a reduction of the amount of the note and mortgage to the correct sum of $3,050, as per agreement with your agent, as heretofore made.

The grounds for above are misrepresentation and deception. I hereby tender you deed in accordance with the above.

JOHN J. STEWART.

It is elementary learning that if the plaintiffs rescind the contract upon their part, they could only have the note and mortgage canceled, and recover any money actually paid upon it.

They could not recover damages for a breach of contract, as an action for damages proceeds upon an affirmance of the contract. Rescission will bar an action for damages when the only damage sustained is in not getting what was bargained for, and no special damages have been proven. 14 Am. and E., p. 170. But where special damages have been sustained, so that the party defrauded is damaged, notwithstanding the rescission, his rescission of the contract will not bar a recovery of such special damages. *R. R. Co. v. Hodnett,* 29 Ga., 461; *Nash v. Title Insurance Co.,* 163 Mass., 574; *Warren v. Cole,* 15 Mich., 265.

The record shows both from the allegations of the plaintiff and the notice of 24 October that the plaintiffs have made a binding election, that is to say, election with full knowledge of all the facts from which the coexisting, inconsistent, remedial rights arise. *R. R. v. Bernheim,* 113 Ala., 489. It seems to be well settled that an election once made, with knowledge of the facts, between coexisting, remedial rights, which are inconsistent, is irrevocable and conclusive, irrespective of intent, and

constitutes an absolute bar to any action, suit, or proceeding, based upon any remedial right inconsistent with that asserted by the election. 15 Cyc., p. 262; *Moller v. Tusker,* 87 N. Y., 166; *Clausen v. Head,* 110 Wis., 405.

From the authorities it is plain that upon the plaintiffs' own showing they are not entitled to recover the $750, as they have elected to rescind and set aside the contract of sale.

We are of opinion that his Honor erred in sustaining the motion for nonsuit, as upon the plaintiffs' evidence the cause should have been submitted to a jury upon appropriate issues of fraud and deceit raised by the pleadings.

Reversed.