# W. L. ROSE v. H. C. FOUTCH et al.

Middle Section.  December 23, 1926.

Petition for Certiorari denied by Supreme Court May 7, 1927.

1. **Fraud.  Misrepresentation of the cost of land in order to secure a loan constitutes fraud sufficient to set aside the conveyance.**
   Where the defendant desired to borrow money from the plaintiff and to give a deed of trust on certain land and he represented to the plaintiff that he paid a much larger sum for the land than was actually paid, and the loan was made upon this representation, held that it constituted fraud which would entitle plaintiff to set aside the deed of trust and recover his money before it was wasted.

2. **Fraud.  Fraud defined.**
   When a party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to obtain an undue advantage of him, in every such case there is a positive fraud in the fullest sense of the term.

3. **Fraud.  Misrepresentation of cost is a misrepresentation of a material fact.**
   The weight of authority, especially in the more modern cases, is that a misrepresentation by a vendor of property to the purchaser as to the cost is a representation of a material fact, being necessarily intended to lead the purchaser into an agreement for the sale and it will afford him ground for rescission of the contract or for relief against it in equity.

**4. Sales. Trade talk. Misrepresentation as to cost held not dealers talk.**
The trend of modern decisions has been to close the gap between "moral honesty" and "law honesty." It is not now the policy of the law to extend for the benefit of sellers the limits of immunity for false statements under the guise of trade talk.

Appeal from Error to Chancery Court, Wilson County; Hon. J. W. Stout, Chancellor.

Affirmed.

Edward M. Mooneyham, of Lebanon, for appellant.

W. B. Williams, and Louis Chambers, of Lebanon, for appellee.

DeWITT, J. The defendant, H. C. Foutch, has appealed from the decree of the Chancellor sustaining the bill of W. L. Rose to rescind a contract of loan, evidenced by note for $1,000 and deed of trust to a tract of land executed to secure the payment of said note. The suit was based upon false representations made by Foutch to Rose inducing Rose to make the loan, and without which it would not have been made. The representations were that Foutch and his wife had paid $2,500 for the land, and it was worth that sum or more. The land was encumbered with a first mortgage for $1,000 and interest, so that the deed of trust herein involved was a junior encumbrance upon the land. This deed of trust was executed on October 11, 1923. At that time Foutch was indebted to Rose by note aggregating with interest, about $350. About six months prior thereto Foutch had filed a petition in bankruptcy, listing this debt among his liabilities. On March 24, 1923, the land was conveyed by one Spickard and his wife to J. H. Burke and his wife, the deed reciting a consideration of $2,500, of which $1,600 was paid in cash and the balance to be paid on October 1, 1923. The lien for the deferred payment was released by Spickard on June 16, 1923. Thus the title stood in Burke and wife upon the face of the record until October 11, 1923; except that on June 5, 1923, Burke and wife encumbered the property with a first mortgage deed of trust to secure a note for $1,000 and interest to the Federal Land Bank of Louisville. The weight of the evidence shows that Burke and his wife were thus holding title for Foutch and his wife, or that they had a material interest in the land under said deed. On October 11, preparatory to the execution of the deed of trust in question, Burke and his wife conveyed the land to Foutch and his wife by deed reciting a consideration of $1,800, $800 paid in cash and the balance by assuming payment of the note held by the Federal Land Bank.

The circumstances of the transaction herein involved were as follows:

On the morning of October 11, 1923, Foutch applied to Rose for a loan, offering to give him a note for $1,000, which should include

the amount of his pre-existing debt of $350, and to secure the same by a second mortgage on the tract of sixty acres of land situated about twelve miles from Lebanon, the place of residence of Rose. The application was made through one Newsom, a brother-in-law of Foutch, who took him to the residence of Foutch, situated on land adjoining the tract in question. Rose was wholly unfamiliar with the character and value of the land. Newsom, Rose and Foutch drove along the road running by a part of the land for about half a mile. The land was partly covered with vegetation and the fence row along the road was grown up with bushes. Rose made nothing more than cursory inspection of the land and from the road was unable to ascertain its character and quality. He might have made much closer inspection, but Foutch told him that while the title was held in Burke, he, Foutch, was in reality the owner of the land and that he had paid $2,500 for it. Foutch pointed out to Rose a place where he said he intended to construct a residence on the land and where he had already a pile of lumber. He assured Rose that the land was fully worth $2,500. After some negotiation while there, Rose agreed to make the loan but as he did not have all the money on hand, it was agreed that Rose would transfer to Foutch two notes secured by liens upon a tract of land, one note of one Zachery for $475 and some accrued interest, and the other of Jim Newsom for $100; and that Rose would give to Foutch the balance in money. All this was subsequently done. A house on the tract of land which was security for these two notes had recently been burned and it was expected that the amount of these two notes would shortly be paid by the Tennessee Farmers Mutual Fire Insurance Company, its policy on the house containing a clause securing the payment of these two notes in the event of loss. During the course of this litigation a bond was given by Foutch and three sureties, upon the dissolution of an injunction restraining the insurance company from paying the money over to Foutch, and conditioned upon the payment to Rose of the amount of said notes or otherwise the performance of the final decree in this cause.

On the same day on which the agreement was made, Foutch and his wife and Burke and his wife came to Lebanon and employed Mr. W. B. Williams, attorney, to prepare the deed from Burke and wife to Foutch and wife and the mortgage from Foutch and wife to secure the payment of the debt to Rose. Rose expressed dissatisfaction with the security and at first said that he had about decided not to make the loan. Rose examined the deed to Burke and wife in the Register's Office and saw that it recited a consideration of $2,500. Foutch, in insisting upon the making of the loan, repeated his statement that he had paid $2,500 for the land,

saying that he had been born and reared upon the farm adjoining thereto, that he was well informed as to real estate values in that neighborhood, that he would not have given $2,500 for the farm if it had not been worth that much on the market at that time; and that he had recently been offered $2,700 by one Jennings, an adjoining landowner. The weight of testimony that these statements were made by Foutch is clear and convincing. The testimony of Rose that these statements were made is fully corroborated by the testimony of Messrs. Williams and Hinson, Attorneys, who were present and heard these statements made by Foutch. Jenings testified that the land was worth about $1,200, and the evidence clearly shows that this about the full value of the land, and Jennings also testified that he never offered Foutch $2,700 for the land. It is also clear from the evidence that Rose relied almost wholly upon these representations in reaching an agreement to make the loan.

It is insisted that although the weight of the evidence may show that Foutch represented that he had given $2,500 for the land, there is really no evidence that this was not true, or that the land was not worth $2,500. But Mr. Williams testified that Foutch told him that in purchasing the land he had assumed the payment of the lien note for $900 held by Spickard and given ten or twelve head of Jersey heifers in addition. The Chancellor found, and the evidence abundantly shows, that these cattle were not worth over $40 per head, and that the total consideration given by Foutch was not over $1,380. The Chancellor also found that the recital of consideration in the deed of Spickard and wife to Burke and wife was fraudulently made for the purpose of perpetrating a fraud on some one, and was done at the instance of Foutch; that while said deed was made to Burke and wife, the property was held in trust for Foutch and wife for the purpose of concealing the property from the creditors of Foutch who soon after making of said deed filed his petition in bankruptcy. We are of the opinion that these conclusions are fairly to be drawn from the evidence.

The transaction in question was, therefore, brought about by the fraudulent misrepresentations of the appellant. These were representations of facts, not expressions of opinion. If the loan had been made upon Rose's examination of the land, although it was very meager, some question might arise under the doctrine of caveat emptor; but after Rose had, upon his return to Lebanon, expressed much doubt, he was induced to make the loan by the misrepresentations that the land had cost $2,500 and that Foutch had refused an offer of $2,700. The land was sold under foreclosure of the first mortgage, after due advertisement, and brought only $1,060.50. As aforesaid, it was worth about $1,200. It afforded no substantial security for a second mortgage debt of $1,000.

Foutch and his wife were insolvent. The object of the bill in this cause is to recover back the money and the notes, or the amount thereof, with which Rose parted upon faith of the representations of Foutch. In our opinion it would be inequitable to deny this relief to the complainant under the circumstances shown. We are fully satisfied with the decree of the Chancellor.

When a party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to obtain an undue advantage of him, in every such case there is a positive fraud in the fullest sense of the term. Barnard v. Roane Iron Company, 89 Tenn., 139, 2 S. W., 21; Scott v. Johnson, 5 Heisk., 614; Kelly v. Turbeville, 11 Lea., 339.

The weight of authority, especially in the more modern cases, is that a misrepresentation by a vendor of property to the purchaser as to the cost is a representation of a material fact, being necessarily intended to lead the purchaser into an agreement for the sale, and it will afford him ground for rescission of the contract or for relief against it in equity. Black on Rescission and Cancellation of Instruments, sec. 84; Mason v. Thornton, 74 Ark., 46, 84 S. W., 1048; Stewart v. Salisbury Realty Company, 159 N. C., 230, 74 S. E., 736.

In the latter case it was held that while the doctrine of caveat emptor applies even to sales of land made where the buyer and seller have equal opportunity and knowledge, it does not apply where the vendor, who was an expert as to land values, falsely stated as a fact the price at which he purchased the property, intending to trick the purchaser into a trade. This rule is directly applicable to the case before us. The misrepresentations were not mere exaggerated praise, puffing or dealer's talk, for such, after all, are largely opinions however loosely formed or given. The trend of modern decisions upon these matters has been to close the gap between "moral honesty" and "law honesty." It is not now the policy of the law to extend for the benefit of sellers the limits of immunity for false statements under the guise of trade talk. Black on Rescission and Cancellation of Instruments, sec. 85; Noyse v. Meharry, 213 Mass., 598, 100 N. E., 1090.

Foutch, of course, knew that he had not given $2,500 for the land and he knew that the transaction was consummated upon faith of his representations. The Chancellor found that the transaction could be rescinded by placing the parties in statu quo. He rendered a decree upon the bond for the amount of the notes but provided that execution would issue after the expiration of thirty days for the satisfaction of this recovery if it had not been satisfied by the return of the notes upon conditions set forth in his decree. In our opinion there was no error in the decree of the Chancellor and it is affirmed.

Faw, P. J., and Crownover, J., concur.