Charles R. HOLT, Sr.,
Plaintiff-Appellee,

v.

AMERICAN PROGRESSIVE LIFE
INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

March 4, 1987.

Rehearing Denied March 20, 1987.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 1987.

Mary Ann Reese, Nashville, for defendant-appellant.

Elaine R. Jett, Nashville, for plaintiff-appellee.

## OPINION

CANTRELL, Judge.

The jury in the court below returned a verdict against the administrator of an insurance plan for fraud or outrageous conduct, punitive damages, the medical payments due on an insurance policy and a statutory bad faith penalty. The administrator asserts that it was entitled to a directed verdict on the question of liability on the policy and the fraud or outrageous conduct claim. In addition the administrator claims that the trial judge prejudiced the jury in the charge.

American Progressive Life Insurance Company is qualified to issue life insurance policies in the state of Tennessee. In addition American Progressive serves as the administrator for Financial Assurance Incorporated, a Colorado corporation, which writes accident and health insurance issued through the National Business Trust. This arrangement allows American Progressive to put together a package of group term life insurance and group accident and health insurance for small businesses.

In January of 1981 Sabina Totty, an employee of Marketing Through Production, a subsidiary of American Progressive, contacted Cagle's Trucking Company for the purpose of quoting a life and health insurance package for the company's employees. Cagle's Trucking Company was a small, individually-owned company that employed the three sons and a son-in-law of the owner.

The son-in-law was Charles R. Holt, the plaintiff in this action. Mr. Holt had suffered a heart attack in March of 1980 and had been unable to work for a period of approximately five months. In January of 1981 he was still taking medicine that had been prescribed by the doctor who treated him after his heart attack.

Cagle's Trucking Company carried health insurance through another company and Mr. and Mrs. Cagle were concerned that Mr. Holt might be excluded from coverage by a new carrier because of his prior health problems. They testified that they described Mr. Holt's condition fully to Ms. Totty and told her that he was still taking medicine for his blood pressure. Mrs. Cagle even called Mr. Holt to get the name of the medicine he was taking. After receiving the information over the telephone, Mrs. Cagle spelled the name of the medicine for Ms. Totty, who wrote it down. On the assurance that Mr. Holt would be covered as long as he was not then under a doctor's care, Mr. Cagle signed the application for the insurance package and authorized the payment of the first month's premium.

Each of the employees of Cagle's Trucking Company thereafter received a certificate of insurance from American Progres-

sive for $5,000 of life insurance and from Financial Assurance for the medical expense insurance. Mr. Holt read his individual certificate and discovered that it contained the following exclusory provision:

"A pre-existing condition which is any injury, illness or disease, including mental illness or functional disorder, that requires treatment, services or medications and/or drugs during the 180 day period preceeding the effective date of coverage. If such a condition exists, benefits otherwise applicable to that particular condition will not be provided for the individual covered member until a period of 90 days has elapsed during which no treatment, services, medication, and/or drugs is used or received for it or until the individual with such condition has been covered under the Plan for a period of one year; whichever occurs first; unless this exclusion is waived in the Schedule of Benefits."

Mr. Holt was concerned about the exclusion because he was still taking medicine following his heart attack. He called Mrs. Cagle and she in turn called Ms. Totty, who reiterated that Mr. Holt was covered so long as he was not under a doctor's care.

Mr. Holt suffered another heart attack in August of 1981. After investigating the claim for approximately four months, American Progressive denied the claim on the ground that prior to his second attack Mr. Holt was still under the care of a doctor for his heart condition and was taking a prescription heart medicine and nitroglycerin in addition to the medicine for his blood pressure.

Mr. Holt sued Financial Assurance and American Progressive for the benefits due under the health policy, for outrageous conduct, fraud and gross misconduct. At the close of the plaintiff's proof in chief, both defendants moved for a directed verdict. These motions were renewed and overruled at the close of all the proof. The trial judge submitted the case to the jury on the question of Mr. Holt's right to collect the benefits under the policy plus the statutory bad faith penalty and on the question of the outrageous conduct, fraud and gross misconduct of American Progressive. The jury returned a verdict of $8,427.43 against American Progressive and Financial Assurance for the benefits under the Financial Assurance policy and added a $1,000 bad faith penalty against American Progressive. On the outrageous conduct, fraud, and gross misconduct claim the jury returned a verdict against American Progressive for $5,000 compensatory damages and $18,000 in punitive damages.

## THE CONTRACT CLAIM

American Progressive asserts that the trial judge should have directed a verdict in its favor on the claim under the Financial Assurance policy and on the statutory bad faith penalty. We agree that this claim is on the contract of insurance issued by Financial Assurance, and since there was no contract between American Progressive and Mr. Holt for the medical payments, Mr. Holt cannot collect that claim from American Progressive.

■ In group insurance cases when an insurer issues a certificate of insurance to the individual employee, a contractual relationship exists between the employee and the insurer. *Paul v. Insurance Company of North America,* 675 S.W.2d 481 (Tenn. App.1984). On the other hand, a contract with a known agent for a disclosed principal is the contract of the principal unless circumstances show that the agent intended to be bound or assumed the obligations under the contract. *Hammond v. Herbert Hood Company,* 31 Tenn.App. 683, 221 S.W.2d 98 (1948). Even in a situation involving an *undisclosed* agency, the third party may sue either the principal or the agent, but not both. *Sparkman v. Phillips,* 51 Tenn.App. 645, 371 S.W.2d 162 (1962).

■ Under the circumstances of this case, we think that liability for benefits under the Financial Assurance policy can only be imposed on Financial Assurance.

Therefore we reverse the judgment below against American Progressive for the payments due under the Financial Assurance policy.

■ On the same reasoning we think that the statutory bad faith penalty assessed against American Progressive must also be reversed. The statute provides:

> The insurance companies of this state, and foreign insurance companies and other persons doing an insurance business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy; and, provided, further that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed. T.C.A. § 56–7–105(a).

We hold that the statute only applies to the insurance company that is liable to pay the claim under its policy. While the bad faith in this case in adjusting the claim, if any, may have been that of American Progressive, it was acting as the agent for Financial Assurance. American Progressive's bad faith was therefore the bad faith of Financial Assurance, so far as it involves the failure to pay the claim. American Progressive's bad faith may be the basis for an independent tort action against it—a matter we will address subsequently—but the statutory bad faith penalty does not attach to the administrator of a plan when the liability for the claim is on the company that issued the policy.

## OUTRAGEOUS CONDUCT, FRAUD, OR GROSS MISCONDUCT

■ The verdict form submitted to the jury asked the jury to find whether American Progressive was guilty of "outrageous conduct, fraud or gross misconduct." We think that the issues in this case raise the possibility of two torts and not three. There is, of course, the tort of outrageous conduct and there is a common law cause of action for fraud or deceit. We think the term "gross misconduct" describes conduct that comes within the definition of outrageous conduct and should not be treated as a separate cause of action.

### (A) OUTRAGEOUS CONDUCT

■ In *Medlin v. Allied Investment Company*, 217 Tenn. 469, 398 S.W.2d 270 (1966), our Supreme Court recognized the tort of outrageous conduct. After reciting § 46 of the *Restatement (Second) of Torts*, the Court said:

> From the foregoing portion of the Restatement, we find the two factors which must concur in order to outweigh the policy against allowing an action for the infliction of mental disturbance: (a) the conduct complained of must have been outrageous, not tolerated in civilized society, and (b) as a result of the outrageous conduct, there must be serious mental injury.

In *Moorhead v. J.C. Penney Company, Inc.*, 555 S.W.2d 713 (Tenn.1977), the court reiterated its stand on this issue in recognizing that the complaint in that case stated a cause of action for "intentional or reckless infliction of severe emotional stress by means of extreme and outrageous conduct."

The comments to § 46 of the *Restatement (Second) of Torts*, includes the following observation:

> "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse

his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."

In this action we are of the opinion that the proof does not show a cause of action against American Progressive for outrageous conduct. The proof does not show that in investigating Mr. Holt's claim American Progressive intentionally or even recklessly acted in a manner that would naturally lead to the infliction of emotional distress. Mr. Holt does not say that he suffered from the type of severe emotional distress that is described in the cases. Therefore we are of the opinion that the trial judge should have directed a verdict in favor of the defendant on the issue of outrageous conduct.

### (B) FRAUD AND DECEIT

The elements of the common law action for fraud and deceit, as they have developed in this state, are described in *Haynes v. Cumberland Builders*, 546 S.W.2d 228 (Tenn.App.1976):

"When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. *Rose v. Foutch*, 4 Tenn.App. 495 (1926). The representation must have been made with knowledge of its falsity and with a fraudulent intent. *Shwab v. Walters*, 147 Tenn. 638, 251 S.W. 42 (1922); *Vela v. Beard*, 59 Tenn.App. 544, 442 S.W.2d 644 (1968). The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury. *Whitson v. Gray*, 40 Tenn. (3 Head) 441 (1859); *Dozier v. Hawthorne Development Co.*, 37 Tenn.App. 279, 262 S.W.2d 705 (1953).

In commercial transactions the law has recognized a less stringent standard of liability for fraudulent misrepresentations than the common law action for deceit. One who, in the course of his business, profession, or employment, or during a transaction in which he had a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon such information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. *Jasper Aviation, Inc. v. McCollum Aviation, Inc.*, 497 S.W.2d 240 (Tenn.1972); *Hunt v. Walker*, 483 S.W.2d 732 (Tenn.App.1971). This standard of liability substitutes a reasonable care standard for the common law scienter requirement. In other words, in business transactions, a defendant can be held liable for negligent misrepresentations."

In addition to the above developments, our courts have now recognized a cause of action for promissory fraud. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585 (Tenn.App.1980). However, as the above cases illustrate, the basis for the action for fraud and deceit is still the misrepresentation of the defendant, whether intentional or negligent, and some damage flowing from a justifiable reliance on the misrepresentation.

In this case the only representation relied on by Mr. Holt is Ms. Totty's assurance to the Cagles that Mr. Holt would be covered by the Financial Assurance health policy so long as he was not under the care of a doctor at the time coverage attached. This representation was repeated to Mrs. Cagle when she inquired on behalf of Mr. Holt after he received his certificate of insurance.

We must keep in mind that Ms. Totty's representation came after she had been informed that the only medicine Mr. Holt was currently taking was something for his blood pressure. In view of that fact, we fail to see any falsity in the statements

made concerning coverage. When American Progressive finally denied the claim, they did so on the ground that their investigation showed Mr. Holt had continuously been under a doctor's care since his first attack and had been taking nitroglycerin and medicine for his heart disease in addition to the medicine for his blood pressure. Taking the proof in the light most favorable to Mr. Holt, we do not think it shows any misrepresentation to him by Ms. Totty.

Therefore, we reverse the verdict against American Progressive for outrageous conduct and fraud and deceit. Having previously found the issues on the policy in favor of American Progressive, the issues concerning the jury charge are moot.

The judgment of the court below against American Progressive is reversed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal against Mr. Holt.

TODD, P.J. (M.S.), and LEWIS, J., concur.