MoKinNey, <L,
delivered the opinion of the court.
We are of opinion that the application of the petitioner, Childress, to have the biddings opened, and the premises resold, ought to have been allowed. The petition, for that purpose, was presented to . the first term of the court after the sale, and before confirmation of the master’s report of sale. The facts of the case are these: On the 3d of May, 1851, the property known as “ Odd Fellows’ Hall,” situate in Nashville, was sold under a decree of the chancery court, upon a bill brought to enforce a mechanic’s lien existing in favor of Gr. W. Smith, upon said property. At said sale, the defendant, Hurt, became the purchaser at the price of nine thousand five hundred dollars, for which he executed his notes to the master, payable at one and two years, pursuant to the terms of sale.
At the time of said sale, the petitioner, Childress, was the judgment creditor of the corporation, known as the “Independent Order of Odd Fellows,” to the amount of about two thousand dollars. Previously to said sale, executions had been issued on said judgment, and were returned nulla lona; and it appears that *489 “Odd Fellows’ Hall” was the only corporate property belonging to said institution.
The petitioner offered to advance two thousand eight hundred dollars on the sum for which said property was bid off, by the defendant, Hurt, being about thirty per cent., and offers in his petition either to execute his obligations for twelve thousand three hundred and fifty dollars, and take said property, or that the biddings be opened at the minimum price of twelve thousand three hundred and fifty dollars, which he agrees to offer. The petition charges that the purchase, though ostensibly for the private and individual benefit of the defendant, Hurt, was in reality, for the benefit of the “Order of Odd Eellows,” and was the result of a scheme to protect the property against the creditors of the latter.
The defendant, in his answer to the petition, denies that he purchased said property for the “ Lodge,” says he made the bid in his individual capacity, without instructions or authority from the Grand Lodge; “ that he is a member of said Lodge, and feels an interest in the welfare of the order, and is willing to admit, that it is his intention to permit said Grand Lodge to repurchase said house and lot, but he denies that he has executed any paper or instrument binding him to do so.”
The chancellor upon the foregoing facts, refused to open the biddings, and confirmed the master’s report of purchase.
The exercise of the. power of allowing the biddings to be opened, and ordering the premises to be u'esold, must necessarily, in some degree, depend upon the circumstances of the particular case in which the implication *490 is made; yet there are certain established principles, by which the discretion of the court must be regulated. The course of decision upon this subject, in our courts has conformed rather to the English practice, than to that of some of the American courts.
In 4 Kent’s Com., 192, it is laid down, that a “sale at public auction, by the master, is ordinarily a valid and binding contract, as soon as the hammer is down,” and that the purchaser, by force of such sale, becomes entitled to a conveyance “unless there be found mistake or some special circumstances, affording, as in other cases, a ground for equitable relief.” The English doctrine, on the other hand, seems to be, that although in ordinary sales by auction, or by private agreement, the contract is complete when the agreement is concluded, a different rule prevails in chancery sales by a master. In such cases, the purchaser is not considered as entitled to the benefit of his purchase, till the master^ report of the purchaser’s bidding is absolutely confirmed by the court; until confirmation of the report, the contract is not regarded as complete, or binding. And this rule applies equally to cases in which it is sought to compel a purchaser to complete his purchase, as where the latter seeks to enforce the contract; 2 Daniell’s Ch. Hr., 1454, 1460; 1 Sudg. on Vend., 58; 2 U. S. Dig., 338. Until confirmation of the report, the purchaser is not compelled to complete his purchase; nor is he entitled to a conveyance; nor to be let into possession of the estate; neither is he liable to any loss or injury by fire, or otherwise, which may happen to the estate in the interim; 2 Daniell’s Ch. Pr., 1455, and cases referred to in notes. And so, until confirmation of the report, the purchaser may be discharged from *491 bis purchase, on the ground that a good title cannot be made, or of mistake, or other sufficient cause; II., 1452, 1463.
The principle being admitted, that a sale by the master, is not complete, nor binding on the purchaser, till confimation of the report; and this principle has been repeatedly sanctioned and applied by this court. See 11 Humph., 278, and cases there cited. The conclusion is easily arrived at, that, as it is equally the object and duty of the court to see, not merely that the sale is properly conducted, but also that the property shall be sold for the best price that can be had, it is allowable to open the biddings, alone upon the ground of the offer of a larger price, if the advance be so considerable, as to 'furnish a sufficient inducement, under all the circumstances, to a resale of the property; 10 Humph., 275; 2 Daniell’s Ch. Pr. 1485.
"With respect to the advance which ought to be deemed sufficient to require that the biddings should be opened, no very definite rule can be laid down; this must be left to depend, in some measure, on the circumstances of the given case. In the English practice, ten per cent, was formerly- considered to be sufficient on a large sum. Lord Eldon thought that this was not a wise rule to establish; 7 Ves., 420. The rule has fluctuated, and in some cases, the biddings have been opened upon a less advance than ten per cent.; 5 Ves., 655 ; 2 Ross, 606. Without attempting to prescribe any uniform rule upon this subject, we think: it sufficient to say, in the decision of the case under consideration, that under the __ circumstances, the advance offered, of thirty per cent., was sufficient to require the biddings to be npened.
*492 In coming to tins conclusion, we are not left to rest our judgment alone upon tbe fact of an admanced bid. Tbe circumstances of tbe case, almost force tbe conclusion upon tbe mind, tbat tbe purchase was not made by tbe defendant for bis own individual use or benefit; tbe character of tbe property itself forbids such an idea; and to allow him to bold tbe property, and tbat too, at a price so greatly inadequate to its fair value, would be unjust towards tbe creditor’s of the “Lodge,” while on tbe other band, in refusing” him the benefit of a purchase, not in reality made for himself, and from which, personally, be neither expected or desired to derive benefit; and which, if permitted,to stand, would enable him to aid the “Lodge” in defeating the rights of creditors of tbe latter, no injustice, or injury, of which be can justly complain, will be done to him. It is no objection, tbat tbe person seeking to open the bid-dings, is a stranger to the proceeding in which tbe sale took place; or that he has no interest in the subject matter of the sale. It is well settled, in England, tbat any person who is capable of becoming tbe purchaser, may make this application to the court; 2 Smith’s Ch. Pr., 238; 2 Dan. Ch. Pr., 1465. This ought to be so, because it can be a matter of no consequence who the person may be, offering to take tbe estate at an advanced price; and in this view, it is settled, tbat the biddings may be opened on the application of a person who was actually present at the- sale, and might have become tbe purchaser at such sale. Tbe only difference in such case, according to some of tbe authorities, is, that from a person who attended the sale, a larger advance might be required to induce the court to open the biddings at his instance; II).
*493 The decree of tbe chancellor, confirming the master’s report of sale, and dismissing the petitioner’s application, will be reversed ; and the biddings will be opened at the minimum price of twelve thousand three hundred and fifty dollars; the petitioner first entering into bond with sufficient security, to the clerk of this court, for the payment of that sum.