CAMP *et al. v.* RIDDLE *et al.*

(*Knoxville.*  September Term, 1913.)

1. **ADVERSE POSSESSION.**  Possession of separate tracts.

The possession of one of several adjoining tracts conveyed by
the same deed was not constructive possession of either of
the other tracts, where the tracts were separately described
by the deed, and were not covered by one general boundary.
(*Post, p.* 299.)

Acts cited and construed:  Acts 1801, ch. 6, Sec. 48; Acts, 1837-38,
ch. 176.,

Code cited and construed:  Sec. 5915 (S.).

Cases cited and approved:  Haggart v. Ranney, 73 Ark., 344;
Hardie v. Guaranty, etc., Co., 81 Ark., 141; Henry v. Brown,
143 Ala., 446; Quisenberry v. Chenault, 143 Ky., 312; Horn-
blower v. Banton, 103 Me., 375; Elliott v. Cumberland Coal &
Coke Co., 109 Tenn., 745; McSpadden v. Starrs Mountain Iron
Co. (Tenn. Ch. App.), 42 S. W., 497.

2. **JUDICIAL SALES.**  Sale by master.   Effect of confirmation.

A bid at a master's sale continues a mere offer until the court
rejects it or accepts it by confirming the report of sale, but
such confirmation only gives the purchaser an equitable title,
the legal title not vesting until a deed is made by the master
pursuant to a decree, or the lapse of a reasonable time after
the master is ordered to make a deed, if he fails to do so.
(*Post, p.* 301.)

3. **JUDICIAL SALES.**  Passing of title.   Sale by master.

A sufficient time did not, as a matter of law, elapse between
December, 1876, when a decree directed a master to make a
deed for land purchased at a judicial sale, and February 12,
1877, to vest legal title in the purchaser without a deed, under
the rule that title will vest in a purchaser within a reasonable

Camp v. Riddle.

time after a master is ordered to make a deed, if he does not do so. (*Post, p.* 303.)

### 4. EVIDENCE. Recital of deed. Effect.

Acts 1907, ch. 334, sec. 1, provides that all conveyances in an official capacity by a public officer, or one acting in a fiduciary relation, shall be admitted as *prima facie* evidence of the facts recited therein, so far as they relate to the execution of the powers of the office, and section 2 requires all such instruments of record when the act was passed, be admitted in accordance with section 1. *Held*, that recitals, in a master's deed to land belonging to an estate, that decedent left a will which authorized his executor to sell his interest in the land, and that the executor had sold such interest to a person named, to whom the deed purported to convey the legal title, were *prima facie* evidence of the facts recited. (*Post, pp.* 303, 304.)

Acts cited and construed: Acts 1907, ch. 334.

Case cited and approved: Hill v. Moore, 121 Tenn., 182.

### 5. EXECUTORS AND ADMINISTRATORS. Deeds.

A deed conveying estate land made by an executor to himself for a grossly inadequate consideration was voidable at the instance of the persons injured. (*Post, p.* 305.)

---

## FROM BLOUNT.

---

Appeal from the Chancery Court of Blount County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— H. G. KYLE, Chancellor.

C. T. CATES, SR., and LINDSAY, YOUNG & DONALDSON, for appellants.

GAMBLE & CRAWFORD, and CULTON, MORRILL & WASH-
BURN, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the
Court.

The bill in this case was filed asserting title to three
tracts of land lying in Blount county, one of 13,091
acres, another of 696 acres, and a third tract of 1,531
acres. The bill and answer agree substantially on the
following facts: These lands were granted to one
Foute, and were sold in 1868 in the chancery court of
Blount county, in course of the settlement of his estate,
in the case of the *Administrator of Foute* v. *Jane
Foute et al.* They were purchased by eleven persons
in equal undivided shares. One of these persons was
John White, the ancestor of the defendants. The clerk
and master made report of his sale to the June term,
1868, of the chancery court referred to, and the report
was confirmed, but it does not appear that title was
divested and vested by the decree of confirmation. The
sale was partly for cash, but chiefly on long credit. At
the December term, 1876, an order was entered on the
minutes of the chancery court, directing the clerk and
master to make a deed to the purchasers. He did not
make this deed, however, until the 31st day of Decem-
ber, 1878, the deed reciting among other things, that
the purchase money had then been all paid. Prior to
this time, on February 22, 1877, John White died.
Before his death he purchased one-fourth of an undi-

vided eleventh of the land from one of his copurchasers at the court sale. Uniting this with his original purchase, he owned at his death 5-44 of the land in controversy. One John H. Morton qualified as the executor of White. In the will which the latter left, he gave his executor power to sell his interest in the land, if needed for the payment of debts, or if the executor should otherwise deem it to the interest of the estate to effect such sale.

There is oral evidence, which was objected to, but not ruled on, in the trial court, to the effect that the executor, John H. Morton, sold the interest of his testator in the land for the sum of $104, and made a deed to himself, A. L. Wells, and B. A. Morton, as purchasers; Wells being his cousin, and B. A. Morton, his brother. Wells testified that a deed was made and duly acknowledged; that while he did not actually read the deed, and so was unable to state in terms its contents, yet he knew such a deed was made, on a printed form filled in, and delivered, but he does not know what became of it. It was never registered. The deed made by the clerk and master, Goddard, recites that the land had been sold by the executor to the persons already mentioned, and purports to convey the legal title of the John White 5-44 to them. Several of the persons interested in the original purchase at the master's sale testify that after the deed was made by him, John H. Morton, A. L. Wells, and B. A. Morton were always understood and treated as the purchasers and owners of that interest.

The testimony shows that the land was sold by the executor, to himself, and his aforesaid cousin, and brother, at the price of about four cents per acre, when in fact it was worth at the time in the neighborhood of one dollar per acre.

The complainants in their bill, while asserting title to the John White share, allege the loss of the deed said to have been made by John H. Morton to himself and others, claim this as a link in their chain of title, allege that its loss has cast a cloud upon their title, and ask to have this cloud removed by the setting up of that deed. They also allege that they had been in adverse possession of the land for more than seven years next before the filing of the bill, and were still in such adverse possession.

The bill alleges a connected chain of title from the Foute grants, through the chancery sale, and intermediate conveyances down to complainants. The answer admits the connected chain, save and except the deed alleged to have been made by Morton, executor. It denies that any such sale or deed was made, and avers that if they were made, such sale and deed were not only for an inadequate consideration, but also in express violation of the executor's duty, in selling to himself, his brother, and his cousin, under the circumstances stated, and hence void. The complainants do not allege that they were innocent purchasers.

As to the claim of title under the statute of limitations, the defendants deny there was such adverse possession. They also claim if there was any possession

at all, it was in harmony with their rights as cotenants with the complainants, and those under whom they claim.

The facts bearing on the subject of adverse possession are these:

The three tracts were conveyed by one instrument or deed, from time to time, but described in these deeds as separate tracts, and by distinct boundaries. A comparison of the boundaries shows that they lie adjoining each other. One witness says they lie side by side. There is general evidence to the effect that complainants have had tenants "upon the lands" for more than seven years, but no witness testifies to any possession upon any special one of the tracts, or so locates any possession as to enable the court to ascertain how this is. The defendants filed no cross bill.

The chancellor dismissed complainants' bill, and on appeal the court of civil appeals did the same. The case is now before us on *certiorari* to the latter court.

1. We shall first dispose of the question raised on the statute of limitations.

It appearing that, although the three tracts were conveyed by the same deed and adjoined each other, yet they were separately described and not covered by one general boundary, a possession on either one could not, by construction of law, be extended to cover either of the other two. This conclusion is supported by the weight of authority. 1 Cyc., 1128, and cases cited under note 54; also *Haggart* v. *Ranney*, 73 Ark., 344, 84 S. W., 703; *Hardie* v. *Guaranty, etc., Co.*, 81

Ark., 141, 98 S. W., 701; *Henry* v. *Brown,* 143 Ala., 446, 39 South., 325; *Quisenberry* v. *Chenault,* 143 Ky., 312, 136 S. W., 625; *Hornblower* v. *Banton,* 103 Me., 375, 377, 69 Atl., 568, 125 Am. St. Rep., 300, and note. This question seems never to have been presented in any case published in our State Reports, but it has been held that where tracts so adjoining are consolidated under one boundary in a deed, possession on one part will extend to the whole. *Elliott* v. *Cumberland Coal & Coke Co.,* 109 Tenn., 745, 71 S. W., 749.

It not being shown upon which specific tract the possession or possessions referred to in the evidence were located, but it being stated in a merely general way that they were "upon the lands," this cannot be treated as any proof of possession at all. This point and the former were so ruled in a case decided by the old court of chancery appeals of this State, and published in the Southwestern Reporter. A short excerpt from that opinion will present the matter fully. Thus: "Assuming that he lived upon either the Fore lands or the D. A. Cobb grant—one or the other—it does not appear which one. This is left in uncertainty. . . . The conveyance of the Fore lands and also of the D. A. Cobb lands were by the same deed, but by separate descriptions; and they were conveyed as distinct tracts, not as one tract and under one boundary. Therefore a possession upon the Fore land would not be extended so as to take in by construction the D. A. Cobb lands, either as originally granted or under the extended boundary already referred to." *McSpadden*

v. *Starrs Mountain Iron Co.* (Tenn. Ch. App.), 42 S. W., 497, 505. This case was affirmed orally by this court on October 27, 1897.

2. Our statute (Shannon's Code, section 5915 [Acts of 1801, chapter 6, section 48, Acts of 1837-38, chapter 176]), provides that courts having jurisdiction to sell land may either divest and vest title directly, or order the master (also designated clerk and master) to make a deed to the purchaser. In the old case in which the sale here under examination was made, it seems the latter course was taken.

Now what is the effect of the confirmation of the master's sale in such a case? The general custom in this State for many years has been to divest and vest title by the decree; and in many of our cases where the question has arisen collaterally, as in those settling the rights to rents between the purchaser and the defendant, former owner of the land, it seems to have been assumed that this was done, also in cases on petition to reopen biddings and others. But the general effect of our cases is that when a bid is made at the master's sale, this is a mere offer on the part of the proposed purchaser, continuing in its character and holding good, however, until the court acts on it either by rejecting it or accepting it; that this acceptance is manifested by the confirmation of the report of sale. The contract then becomes complete, and the purchaser is the owner of the land. Still he does not obtain the legal title by such confirmation unless the decree divests and vests title, or unless a deed is made

by the master pursuant to a decree ordering him so to do, or unless on being so ordered the master fails to make the deed within a reasonable time, in which latter event title will vest in the purchaser by the mere lapse of such reasonable time. On this last point see *Behrn* v. *White,* 108 Tenn., 392, 67 S. W., 810. We are not aware that our cases have clearly defined, or at any time have undertaken statedly to define, the *status* of a purchaser at a chancery sale who has merely a decree confirming the master's report without purporting to divest and vest title, and which contains no order on the master to make a deed. We are of the opinion that in such a case the purchaser obtains an equitable title, the full beneficial interest, with the bare legal title outstanding, which he has the right to obtain, on payment of the purchase money, or on performance of other conditions contained in the decree of confirmation, by application in the same case for an order on the master to make the deed, or by other supplemental proceedings to that end. Such was the *status* of John White and his associates after the date of the confirmation of the master's report at the June term, 1868, in the said case of *Administrator of Foute* v. *Foute.* By that confirmation they obtained the full equitable title or right, but the legal title was left outstanding.

We cannot say that sufficient time elapsed between December, 1876, when the order was entered, directing the master to make a deed to the purchasers, and February 12, 1877, the date of John White's death, to

justify the court in declaring that the title vested in John White because of such delay within the rule laid down in *Behrn* v. *White,* supra.   At this distance of time we cannot say that the delay was unreasonable. We do not know that all the purchase money had been paid.  We may infer from the recitals of the deed that this was not accomplished until about the time the deed was made.  We are of the opinion that the reasonable time would expire, upon the master's failure to make the deed as ordered, after the payment of the purchase money.

3.   We shall now consider whether the legal title passed under the facts stated.

The master's deed recites the death of John White; that he left a will which authorized his executor to sell his interest in the land; that his executor had sold this interest to A. L. Wells, B. A. Morton, and John H. Morton.  Thereupon this deed purported to convey to these three persons the John White land, that is the legal title thereto.  The recitals of this deed must be taken as *prima facie* true within the terms of the act of 1907, chapter 334, and the case of *Hill* v. *Moore,* 121 Tenn., 182, 113 S. W., 788, construing that statute. Section 1 of that act provides that all instruments of conveyance executed in an official capacity by any public officer of this State, or by any person occupying a position of trust or acting in a fiduciary relation, "shall be admitted, held, and construed in and by the courts of this State as *prima facie* evidence of the facts in such instruments recited in so far as such facts

relate to the execution of the powers of such office or
trust.'' Section 2 provides that all such instruments
of record at the time the act was passed must be ''ad-
mitted, held and construed in accordance with section
1,'' In *Hill* v. *Moore* the act was applied to a master's
deed made on the 21st of January, 1902. The deed
under consideration in that case recited the general
purport of the decree under which a sale had been
made by the master, his report of sale, the confirmation
of the report, the payment of the purchase money pur-
suant to the requirements of the decree, and that in
view of these facts the deed was made. The court
said: ''From these recitals the court would presume,
under the statute referred to, that the court that or-
dered the land so sold had jurisdiction of the parties
and subject-matter, and, in short, that the clerk acted
under due authority in making the deed. Under the
statute referred to the burden would rest upon anyone
questioning such authority to file a copy of the rec-
ord to overturn the *prima facie* case made by the deed.''

The recitals contained in the deed now before the
court state facts relating to the execution of the pow-
ers conferred on the master by the decree; that is, the
power to make a deed to the purchasers. This neces-
sarily included the assignees or vendees of the pur-
chasers, since it was incumbent on the master to ascer-
tain these as a necessary preliminary to making the
deed. The recital, it is true, made only a *prima facie*
case, but in the present instance there is no evidence
to the contrary. Indeed these recitals are supported,

Camp v. Riddle.

as shown in the statement of facts, by the testimony of A. L. Wells.

Now, passing for the present the question of setting up the lost deed, the inquiry occurs as to whether such relief is necessary to enable the complainants to obtain a decree asserting their title. We have seen that the legal title passed by the deed which the master made under the authority of the court. This deed was made to A. L. Wells, B. A. Morton, and John H. Morton as assignees of John White, along with the conveyance to the original vendees. From these and others interested in the original purchase the complainants have received, through mesne conveyances, the legal title, and they have the right to a decree so adjudging.

If it were necessary to set up the alleged lost deed the court could not grant affirmative relief because it appears that that deed was made for a grossly inadequate consideration, and was made by the executor in breach of his duty. Although so made, it was not absolutely void, but merely voidable, at the instance of persons injured thereby. The defendants, as stated, have filed no cross bill attacking the deed. It being unnecessary to set up that deed in order to declare the passage of the mere legal title, the duty of the court is to declare the passage of the latter, and leave open the question whether the equitable interest passed to the complainants, and those under whom they claim. The decree in the present case will therefore reserve to the defendants the right to hereafter file an original bill if they see proper to attack the *bona fides* of the

deed made by the said John H. Morton, executor. The court makes this reservation because of the odiousness of a deed made under the circumstances stated and the failure of the complainants to allege and prove that they were innocent purchasers. The court does not decide how far laches may interfere with the rights of the present defendants in such new proceeding or the contrary, or whether under all the facts there has been laches, or the contrary. We are of the opinion that complainants should pay all of the costs of the present proceedings, and the decree will so adjudge.