# JAMES E. MATTHEWS et al. v. R. R. ESLINGER.
## —292 S. W. (2d) 543.

En Banc at Knoxville. January 7, 1955.

Petition for Certiorari denied by Supreme Court June 10, 1955.

Rehearing denied by Supreme Court August 2, 1955.

118

Goddard & Gamble, Maryville, for Matthews and others.

Frank B. Bird and D. H. Rosier, Jr., Maryville, for Eslinger.

AVERY, J. Parties will be referred to as they appeared in the Court below. Matthews et al. as petitioner and the Appellant, R. R. Eslinger as respondent.

The pertinent facts are that J. E. Matthews et al. filed a bill in the Chancery Court of Blount County against Beulah French et al. for the purpose, among others, of selling the land of which Steve W. McReynolds died seized and possessed. With other tracts there was a tract known as the ''Jeffreys Tract'' legally described and alleged to contain 146 acres, more or less. All proper orders and decrees were made by the Court and the real estate was offered for sale. After due advertisement by the Clerk and Master, it was sold on Saturday, October 20, 1951 pursuant to the Court's order, and on that date R. R. Eslinger offered a bid of $4,000 and the referred to ''Jeffreys Tract'' was struck off to him at said bid, the next highest bid therefor being $3,800. The terms of the sale, as provided by the order of the Court, was for one-third cash and the balance due in six and twelve months, bearing interest from date of sale. Immediately after the said tract had been stricken off to Eslinger, he requested the Clerk and Master to permit him to return to the office of the Master on the following Monday to make the cash payment and execute the required note. The excuse offered by Eslinger to the Clerk and Master for the delay being that he had certain business transactions which he had to make with the bank before it closed at noon. The Clerk and Master granted the request of Eslinger, who did return on said Monday and again, at his request, the completion of the transaction was postponed for a few days, as the Clerk and Master understood. Eslinger returned to the office of the Master during that week and finally informed him that he did not expect to complete the transaction.

On about November 5, 1951, Eslinger was notified by counsel representing the original petitioners that the

"Jeffreys Tract" would be readvertised for sale and if it did not bring as much as he had bid at the first sale, he would be required to make up the deficiency. He did not comply with the terms of the sale at which he had bid and the said tract was again advertised for sale, under the terms of the former decree, without any additional order from the Chancellor, on which date the highest bid offered was by the Overlook Supplies, Inc. Its bid was $2,800, and the terms of sale were complied with and thereafter, on December 21, 1951 the report of the sale of this tract to the Overlook Supplies, Inc. at the aforesaid bid of $2,800 was confirmed by the Chancellor and title thereto divested and vested in accord with the report of the Master.

Eslinger was given notice of this last sale and confirmation at $2,800 and demand was made for payment of the deficiency with cost of readvertising and selling this tract.

On October 7, 1952, James E. Matthews, as Administrator of the Estate of Steve W. McReynolds and his widow, Edna M. McReynolds, filed a petition against R. R. Eslinger, in the original cause, setting forth the facts with respect to the sale and the intervening action on the part of the parties and counsel, and by that petition, Eslinger was made a party of record to the original proceedings. The petition alleged that Eslinger was in contempt of court for his failure to comply with his bid and prayed that an attachment issue for his body and that he be adjudged guilty of such contempt and punished therefor. The petition also prayed for judgment against R. R. Eslinger for the $1,200 difference between the amount of his original bid and the final sale bid for the Jeffreys tract, and for general relief.

All proper process issued as prayed for and Eslinger was brought into Court by an attachment of his body and by subpoena to answer and he did answer the petition, seeking to set up several defenses by plea and answer. His plea was that of the statute of frauds to the effect that neither he or any person lawfully authorized to bind him ever executed a "contract or agreement in writing, or any memorandum or note in writing, or any contract or agreement for the purchase of the said 'Jeffreys Tract' or any part thereof."

The foregoing plea was filed simultaneous with his answer, which admitted his personal bid of $4,000 at the original sale, but undertook to avoid liability for his bid on the grounds that the next highest bid of $3,800 was not a bona fide bid. He admitted that he had told the Clerk and Master that he would return on Monday, October 22, 1951, to complete the matter. The exact statement in his response or answer in this regard is as follows: "This respondent admits that he informed the Clerk & Master he would return the following Monday, October 22, 1951, to complete the matter."

His response denies, however, that he ever thereafter told the Clerk and Master that he would close and complete the transaction. He admits that he "did definitely inform the Clerk & Master, on about October 26, 1951, that he did not expect or intend to complete the transaction." And in support of such action he avers that the tract was represented as having a river frontage, accessible for stock water, but that upon investigation he found the bank so steep that the water was not accessible to the stock. For further excuse he states that the Clerk and Master during the first sale and while crying the bids on this tract, had said that this tract of land had

''a lot of that good kind of pink marble on it,'' and that his investigation shows that there was no merchantable marble thereon or therein, and he further answered that it was announced at said sale, and not denied by the Clerk and Master, that the tract had a good road leading into it and a mail route, but that investigation revealed no passable road or mail route in or upon the tract. He admitted that he received a letter from attorneys for petitioners advising him of the course to be followed which lead up to the filing of the petition; that he attended the second sale only for the purpose of trying to further ascertain whether the $3,800 bid at the original sale was bona fide, and that after the second sale he received a letter from counsel for petitioners that the Overlook Supply, Inc. bid of $2,800 was the high bid and that the sale had been duly confirmed to it.

He denied the allegation in the petition to the effect that he had offered $1,000 and to pay the cost of readvertising, but that he had told the Clerk and Master that it would be better business for him to forfeit $1,000 rather than take the property at $4,000, and that he, on a later date offered to pay $500 rather than have a law suit, after he had first made a proposition to pay the $200 between his bid and the $3,800 bid made at the first sale by some person, but that both propositions were rejected.

He denied that he was in contempt of court or that he had committed any act which justified that he be so declared.

The case was heard, on this petition, plea, answer and evidence before the Honorable George R. Shepherd, Chancellor, sitting by interchange with and for the Chancellor for the Chancery Court of Blount County, the

Honorable Ben Robertson, on September 23, 1953, upon oral testimony, the order to hear on oral testimony having been specifically ordered by the Court, by authority of the law giving him such discretion and the court entered a decree adjudging (1) That the allegations of the original petition were true. (2) That respondent was indebted to the petitioners in the sum of $1,210.50 and entered judgment against him accordingly. (3) That respondent was in wilful contempt of the court by enter-ing his bid on the ''Jeffreys Tract'' and refusing to comply therewith, and fined the respondent $10, committing him to jail until the fine was paid, but provided that this fine would be remitted upon payment of the judgment and cost.

Respondent made seasonable exceptions to the decree of the court, prayed and was granted an appeal to the Court of Appeals of Tennessee at Knoxville, upon the making of an appeal bond in double the amount of the judgment and an appearance bond in the sum of $500.

Thus the record is before this Court upon two assignments of error as follows:

''First: The learned Chancellor erred in holding that respondent was indebted to petitioner in the sum of $1210.50.

''Second: The learned Chancellor erred in holding that respondent was in wilful contempt of the Trial Court and fined him in the sum of $10.''

Briefly the position of respondent is that, (1) there was no completed judicial sale to him, (2) no proper procedure followed by which the respondent was bound for the deficiency, and (3) therefore no ground for holding respondent guilty of contempt.

124

■ It is admitted by the Clerk and Master that he made no report to the court of this particular sale to respondent, as a purchaser of the property, prior to the time the property was resold or prior to the time the petition was filed in this cause. The first question posed by this record, therefore, is: What is the legal status of a bidder at a judicial sale, of this character, who offers the highest bid and the property is knocked off to him by the officer of the court, in this instance the Clerk and Master?

"When a person bids at a chancery sale, he thereby submits himself to the jurisdiction of the court as to all matters connected with such bid; and if his bid is accepted by the master before it is withdrawn, * * * if the purchaser failed to make payment or comply with the terms of sale, the master may again expose the property to sale on the same day, or on a subsequent day, and after giving due notice of the time and place according to the directions contained in the decree; or the master may report the facts to the court, which last would be the proper course, if the purchaser is a solvent person, and his bid higher than could probably be obtained on a resale." Gibson's Suits in Chancery 4th Ed., page 541, Sec. 643.

■■ The master may allow a reasonable time and opportunity for the bidder to comply with the terms of his bid.

"If the purchaser of property sold at a master's sale fails to make payment, or comply with the terms of the sale, the master may again expose the property to sale, on the same day; or he may readvertise it and resell it, according to the directions contained in the decree. If the master is satisfied with the good faith and ability of the highest bidder, he may allow

him a reasonable opportunity to comply with the terms of his bid. If, however, the master has reason to doubt the good faith or the ability of the bidder, he may demand an immediate compliance with the terms of the sale." Gibson's Suits in Chancery 4th Ed., page 529, Sec. 627. See also Irby v. Irby, 79 Tenn. 165.

In Footnote No. 38 to the above section it is said that:

"This reasonable opportunity might be a day, or a week; but it should not be so extended as not to leave time for the master to readvertise the property."

In Irby v. Irby, supra, the Clerk and Master had announced that the bidder would be given one hour to comply with the sale, whereupon the bidder stated that he would not be able to comply with it before the following Monday. The master resold the property at once, with the understanding that if the bidder complied with the terms of sale according to his promise, the following Monday, the sale would be reported to him. The property was then sold at a much less bid, and the original bidder failed to comply with the terms of the sale. The master reported the facts to the court. The court confirmed the action of the master, and on appeal the Supreme Court held that the master's action was entirely correct and affirmed the Chancellor's decree. In 50 C. J. S., Judicial Sales, Sec. 33, page 630, Summary Proceedings it is said:

"Compliance with the bid may be enforced by summary proceedings, even before confirmation, and regardless of whether there was any payment or memorandum in writing at the time the sale was made."

In the footnotes are cited In re: Bond & Mortgage Guarantee Co., 288 N. Y. 270, 43 N. E. (2d) 38; State ex rel. Chard v. Androw, 171 Wash. 178, 17 P. (2d) 874.

██ We hold that a bidder at a judicial sale made in our courts of chancery, who offers the highest bid and to whom the Clerk and Master has "knocked down" the property so advertised for sale, thus accepting the bid, has made himself a party to the proceedings and subjects himself to the jurisdiction of the court, and that jurisdiction will be exercised so long as the control of the court over the cause and the parties continues. We also hold that whether the sale is confirmed to such a bidder and where such a bidder has not sought relief, by a proper petition or proceedings in the court to be relieved of his bid because of some fraud or mistake, such as failure of title, which would justify such relief, he is such a party to the original cause, as when it is made known to the court that he has failed to comply with his bid, he becomes a contemnor, subject to be dealt with by petition, for contempt, and also a judgment for any deficiency in his bid and the amount at which the property is finally sold. Vanbibber v. Sawyers, 29 Tenn. 81; Mosby v. Hunt, 56 Tenn. 675; Deaderick v. Smith, 25 Tenn. 138; Reese v. Copeland, 74 Tenn. 190; Camp v. Riddle, 128 Tenn. 294, 295, 160 S. W. 844; State of Tennessee v. Quintard, 6 Cir., 80 F. 829, 835, 26 C. C. A. 165; Davis v. Mercantile Trust Co., 152 U. S. 590, 594, 14 S. Ct. 693, 38 L. Ed. 563; Kneeland v. American Loan Trust Co., 136 U. S. 89, 10 S. Ct. 950, 34 L. Ed. 379; Stuart v. Gay, 127 U. S. 518, 8 S. Ct. 1279, 32 L. Ed. 191; Blossum v. Milwaukee, etc., Railroad Company, 1 Wall. 655, 17 L. Ed. 673; Muse v. Donelson, 21 Tenn. 166, 169; Allen v. East, 63 Tenn. 308.

In Vanbibber v. Sawyers, supra, it is said:

"It is well settled that a purchaser at a sale made by a master, under the decretal order of a court of chancery, thereby makes himself a party to the proceedings in the cause, for some purposes, though not a party originally, and subjects himself to the summary power of the court, in the exercise of its inherent jurisdiction, to enforce and give effect to its own orders and decrees, to compel him to complete his purchase, by paying the purchase-money."

In the State of Tennessee v. Quintard case, supra, 80 F. at page 835 it is said:

"It is also settled that the purchaser, *by his bid*, becomes a quasi party to the suit, and is affected with notice of every step subsequently taken in the case relating to the purchase and the title acquired thereby." (Emphasis added.)

We emphasize the clause "by his bid" because the bid when accepted by the master, subject alone to the approval of the court, is the first and binding step by the bidder making him a quasi party to the suit and thus subject to all actions of the court subsequently taken in the cause.

We approve the statements of the learned Chancellor in his opinion, and particularly that part of his opinion when he said:

"A bidder at this kind of sale has no right to place a bid on it and put himself at the top of the list, that is make himself the highest bidder, and then to go and look over the property and determine whether or not he is satisfied with his bid.

"The Clerk & Master as special commissioner, I assume, or certainly as Clerk & Master, was carrying out the orders of the Chancery Court, and that order was just as sacred, and his action in carrying that out was just as sacred as if the Court had actually been on the scene and if it had been the Chancellor acting."

The court should not and will not permit interference with the orderly process of the court through its clerks or other officers in carrying out the terms and provisions of its decrees. To permit such tampering with the processes and procedure of the court as would authorize persons to bid at judicial sales who did not know whether they would comply with the terms of sale or not, unless on account of some legal reason seasonably pursued, would be opening the door to fraud and deceitful interference with persons who might be present and interested in purchasing the property to be sold, and create a sentiment in the minds of the public which would destroy, not only the orderly procedure of such action in pending causes, but which would create a disrespect for the court itself.

It should be observed that no error is assigned to the action of the court with respect to its decree on respondent's plea of the statute of frauds, and we are not called upon to make a determination in that regard.

■ The respondent has taken refuge in the decisions of our courts that a bid at a judicial sale is merely an offer to purchase, thus adopting the "so-called English rule that a sale of land by the Clerk and Master is not a sale at all, but a mere offer, which ripens into a sale only when accepted by the court in an orderly confirma-

tion.'' No violence is done to this rule by holding a bidder who has offered the highest bid at a judicial sale and the property is struck off to him and who refuses to comply with the terms of sale, liable for the deficit resulting from a second sale, without some legal excuse. And should such a bidder have a reasonable and legal excuse for being relieved from compliance with the terms of sale, it is his duty to immediately seek relief by petitioning the courts therefor. He should not, and will not be permitted to stand by and refuse to take any action to bring relief for himself until it is by response to a petition seeking a recovery against him, provided there is a valid order of sale, such as is found in this record.

Respondent relies upon the authorities of Childress v. Hurt, 32 Tenn. 487; Tennessee Marble & Brick Co. v. Young, 179 Tenn. 116, 163 S. W. (2d) 71; Reese v. Copeland, supra; Eakin & Co. v. Herbert, 44 Tenn. 116 and Camp v. Riddle, 128 Tenn. 294, 295, 160 S. W. 844.

In the case of Childress v. Hurt the court simply determined the fact that the court has a right to reopen the biddings on a proper petition, or to refuse to do so, giving consideration to the facts of the case. In the case of Tennessee Marble & Brick Co. v. Young, supra, the question was simply the validity of a tax sale by the court where the decree of confirmation was entered after the effective date of the ''Tax Morotorium Act of 1935.'' The court held the decree void, and in that connection the court said that sale by the master was not complete until there was a valid decree confirming it, and that title to such realty did not pass until there had been final valid decree divesting and vesting title. The case has no application to the question raised in the instant proceedings. In Reese v. Copeland, supra, the court had before

it the question of reopening the biddings, upon an advance of almost 100% and the validity of a change in the terms of the sale. This proceedings was objected to by the high bidder at a prior sale. In that case the rights of no creditors were involved. The heirs themselves had asked for this resale and for a change in the terms of the sale and the court said:

"And the question is, whether a purchaser, by the mere fact of being the highest bidder at a judicial sale, acquires a right to insist upon a resale upon the terms of the original sale."

The court further said in that case:

"He does, by his bid, become such a party as to enable him to appeal from any decree affecting his rights."

Thus it is seen that a bidder, to whom property has been knocked off at the highest bid, makes himself amenable to the proper court procedure in the cause and also permits him, as such a party, to complain at the action of the court affecting his rights. That case is not determinative of the question before us.

In Eakin & Co. v. Herbert, supra, the improvements on the property sold had burned before the confirmation. The bidding purchaser was released because of the fact that there had been a partial destruction of the property bid upon by him before title was actually vested. In that case the court said: "The rule in chancery sales is, that the purchaser of real estate is not considered as entitled *to the benefits of his purchase* until the master's report of the purchaser's bidding has been absolutely confirmed by the court," and upon that authority it further said:

"Until confirmation of the report of sale, the purchaser is not liable for any loss or injury which may happen to the property in the interim, by fire or otherwise." (Emphasis added.) That case affords no refuge for the respondent, because it is not insisted by Eslinger that during the interim after his bid was accepted and the date on which he informed the Clerk and Master that he would not comply, that any part of the property in question had been destroyed, or that title was defective, and no such insistence is made by the response to the petition.

It is insisted by respondent that the procedure by the Clerk and Master was irregular, in that he did not report the sale to the court and obtain an order for resale, in which it was specifically shown that the resale was ordered at the risk of the first purchaser, and respondent undertakes to support that contention by the opinion in the case of Sharp v. Hess, 1 Shan. Cas. 603. In Sharp v. Hess the report had been made to the court and a decree entered expressly nullifying the first sale and ordering a second sale. The appellate court set aside the decree of the lower court holding Hess not liable for his bid saying:

"The sale to him had never been confirmed, but it was expressly nullified and set aside. He was entitled to notice that the resale was at his risk and that such notice should have been set forth in the decree. The petition came too late after the bid of Hess had been repudiated by the decree and treated as a nullity."

In the instant case the respondent was notified by written notice that he would be held to his bid. He was

notified of the date of the resale. He attended the resale, and thereafter sought no relief whatever until the petition was filed against him. By his own acts he "brought the house down upon his own head." We can see nothing in the Sharp v. Hess case that is a refuge for respondent.

We think the case of Allen v. East, supra, is authority for the position taken by petitioners, rather than supporting that of respondent.

We are clearly of the opinion that the judgment of the court awarding a recovery against the respondent was correct.

■ Passing now to the question of contempt, and the assignment of error with respect thereto. The trial court reviewed the action of respondent holding that respondent had made a bid with the idea of inspecting the property before he complied with the terms of the order of sale; that he went forth with his scheme or plan by telling the Clerk and Master that he would return on the following Monday and comply with the bid, which he finally refused to do, and said:

"To start with, that is in contempt of the orders of the Chancellor, because he was interfering with the orderly process of the court in directing the sale."

In Section 10119 of the Code of Tennessee the several grounds, for which the courts may punish for contempt are specifically set out. Subsection 4 thereof is as follows:

"Abuse of, or unlawful interference with, the process or proceedings of the court."

We think the respondent is guilty under said section of abusing or interfering with the proceedings of the court in the pending cause, and we approve the action of the Chancellor as indicated in the above quotation from his opinion, and as provided in his decree.

The result is, therefore, that all assignments of error by respondent are overruled. The decree of the Chancellor is affirmed with cost and interest on the original judgment from the 23rd day of September, 1953. Judgment will be entered here against respondent R. R. Eslinger and his sureties on his appeal bond, Frank B. Bird and D. H. Rosier, Jr. for $1,200 principal, with interest thereon from September 23, 1953, the cost of $10.50 accruing as the result of the resale of the property and all the cost in this Court.

The cause will be remanded to the Chancery Court of Blount County, where the decree of the Chancellor with respect to contempt will be executed.

McAmis, P. J., Felts, Hale, Hickerson, Howard, Howell and Carney, JJ., concur.

Swepston, J., not participating.