ROBERT JACKSON SPARKMAN, a Minor b/n/f Henry R. Sparkman, v. E. CECIL PHILLIPS, Trustee, Chattanooga Federal Savings & Loan Assn., and Unknown Heirs of Mattie P. Cowart and Luck Ann Sparkman.—371 S.W. (2d) 162.

Eastern Section. November 13, 1962.

Heard by Western Section, at Knoxville.

Certiorari Denied April 3, 1963.

646

Moon, Harris & Dineen, Chattanooga, for appellant.

Tanner & Thrasher, and French B. Frazier, Chattanooga, guardian ad litem, for appellee.

BEJACH, J. This cause involves an appeal by the Title Guaranty & Trust Company of Chattanooga from a decree of the Chancery Court of Hamilton County holding it liable on a bid of $14,000 for property belonging to the appellee, Robert Jackson Sparkman, a minor, and entering judgment against it for that amount, plus interest. The decree of the Chancellor also denied to appellant the right to intervene as a defendant in this cause and file a cross bill against its principal, Dr. J. E. Kimball.

The original bill in this cause was filed April 17, 1961 by Robert Jackson Sparkman, a minor, by next friend, Henry R. Sparkman, against E. Cecil Phillips, Trustee,

Chattanooga Federal Savings & Loan Assoc., and the unknown heirs of Mattie P. Cowart and Lucy Ann Sparkman. The bill alleges that complainant, through his mother, Lucy Ann Cowart Sparkman, inherited property from his grandmother, Mattie P. Cowart, a widow who died about February 9, 1960; that the property in question is known as 820 McCallie Avenue, Chattanooga, Tennessee; and that same is encumbered by a trust deed in favor of the Chattanooga Federal Savings & Loan Assoc., securing a loan made by it, the unpaid balance of which was alleged to be approximately $2,601.04. The bill alleged that E. Cecil Phillips, Trustee, under the trust deed encumbering said property was about to foreclose same; but that if the property were properly managed, sufficient income should be obtained to pay the installments due. The bill prayed for an injunction against the foreclosure sale and for the appointment of a custodian or curator for management of said property. In the alternative, the bill prayed for sale of the property for manifest interest of the minor complainant. The defendants, E. Cecil Phillips, Trustee, and the Chattanooga Federal Savings & Loan Assoc., filed a joint answer which sets out that the balance due on their loan, together with the interest thereon, amounted to $3,040.79. The answer avers that said defendants have no objection to a sale of the property by the court, so long as the priority of their indebtedness is maintained. Said answer was filed for said defendants by Frazier and Frazier, by French B. Frazier, as solicitors.

By order entered April 28, 1961, the Chancellor granted an injunction against the foreclosure, appointed E. Cecil Phillips as agent to manage the property, and appointed French B. Frazier as guardian ad litem.

Thereafter, on June 26, 1961, an offer to purchase the real estate here involved was filed. This offer to purchase is labeled "CONTRACT FOR THE PURCHASE OF REAL ESTATE," and same is dated April 19, 1961. This contract or offer is the subject matter of the present appeal. It is addressed to E. Cecil Phillips Agency, Realtor, and offers to buy the real estate involved in this cause for the sum of $14,000. It recites that it is to be open for 90 days, and that proper warranty deed and evidence of title are to be tendered within 15 days after acceptance. It recites that a deposit of $500.00 was tendered with the offer, to be refunded if the offer were not accepted, but the record discloses that this deposit of $500.00 was never made. The offer, as filed, is signed "Title Guaranty & Tr. Co., Trustee (For J. E. Kimball) Buyer, by Charles O. Hon, Jr., Pres." The instrument has a blank which is unfilled, showing that the offer is accepted and the seller agrees to pay a 5% commission, but these blanks have not been filled in nor executed. Beneath that is written:

"June 26, 1961

"This offer was made in behalf of Dr. J. E. Kimball and withdrawn upon his order. He does not desire to make the offer at this time. The court asked that this copy be filed by Title Guaranty & Trust Co., Trustee and such offer is tendered only because of such order of the court.

>"Title Guaranty & Trust Co. Trustee
>for Dr. J. E. Kimball
>"by C. O. Hon, Jr., Pres."

The record shows that the property was appraised as being worth $12,500.

From the memorandum opinion of the Chancellor which was incorporated in the decree entered October 27, 1961, we quote as follows:

"On July 26, 1961, the Title Guaranty & Trust Co. of Chattanooga, Trustee, filed the following motion:

" 'Comes the Title Guaranty & Trust Co., Trustee, by its solicitors, and moves the court for leave to intervene in this cause as a party defendant, and for further leave to file answer filed as cross bill, hereto attached and made a part of this motion.'

"Attached to the motion was an 'Answer Filed as Cross Bill for the Title Guaranty & Trust Co. of Chattanooga.' In support of the motion, Mr. Charles O. Hon, Jr. filed an affidavit that stated that he as president of the Title Guaranty & Trust Co. of Chattanooga, which is engaged in the business of insuring real estate titled and related transactions, and that, as such president, on April 19, 1961 he was authorized by Dr. J. E. Kimball to execute an offer to purchase the minor's real estate; that on the date the offer was made it was originally typed for $16,000.00, but was changed to $14,000.00 by Dr. Kimball, whose initials appear opposite the change; that the offer was then submitted to realtor E. Cecil Phillips, and that, although the offer recites $500.00 was tendered as earnest money, the $500.00 was never paid over to the agent. Mr. Hon then said under oath that he was later informed by Dr. Kimball that the offer was to be withdrawn and affiant secured all executed copies of the contract from the realtor. He acknowledges that, after the cause came on to be heard on motion to confirm the sale, he was

informed by complainant's solicitor that the Court ruled from the bench, after hearing the proof in the case, that it was to the manifest best interest of the minor that the sale be confirmed, but it developed that the offer to purchase the real estate was not in the file, and the Court ordered that the offer be filed with the Clerk and Master. Mr. Hon says that he thereafter wrote on the face of the offer that the Title Guaranty & Trust Company was 'Trustee (for J. E. Kimball)' and wrote on the back of the offer,

" 'June 26, 1961

" 'This offer was made in behalf of Dr. J. E. Kimball and withdrawn upon his order. He does not desire to make the offer at this time. The Court asked that this copy be filed by Title Guaranty & Trust Co., Trustee and such offer is tendered only because of such order of the Court.'

and that this notation was written 'so that the Court might not be misled into action that might result in additional cost and delay to the parties to the suit and for the *further reason of preventing a loss to the corporation.*' (Italics supplied.)

"The answer and cross-bill submitted by Title Guaranty & Trust Company along with its motion was not allowed to be filed because material facts were omitted from the answer and cross-bill and also from the supporting affidavit.

"Mr. C. O. Hon, Jr., in addition to being President of the Title Guaranty and Trust Company, was enrolled on the roster of solicitors of this Court on December 10, 1949. He made no appearance before the Court in connection with producing the offer to

purchase before being ordered to do so, but he did, before the written offer was withdrawn from the agent, in a casual manner inform the Chancellor at a public eating place where both were eating lunch at the same table that his corporation had made an offer to purchase the real estate as Trustee for Dr. Kimball and that the Doctor for health reasons wanted to withdraw the offer. He was then informed that no one but the Court has the power and authority to permit an offer made for the purchase of an infant's or incompetent's property to be withdrawn. Whereupon, he said, 'I will then have to file a petition to be permitted to withdraw the offer.' Instead of filing such a petition, Mr. Hon procured the return of the written offer from the realtor. On the occasion above referred to Mr. Hon was also informed by the Chancellor that any time a Trustee makes an offer in writing to purchase real estate as Trustee, without disclosing for whom he is acting or setting out the purpose of the trust, the word 'Trustee' is surplusage and that the agency rule applies, which binds an agent as principal where the name of the principal is not disclosed.

"After June 26, 1961, when the Court learned about the offer having been withdrawn, Mr. Hon was personally ordered to appear in Chambers and was severely reprimanded for his unethical conduct.

"There are some additional facts, which the record does not disclose. Sometime after the offer was made by Mr. Hon for the Title Guaranty and Trust Company, Trustee, a salesman in the office of E. Cecil Phillips appeared in Chambers, submitted the offer to the Court and stated that Mr. Phillips

strongly recommended its acceptance. Mr. Phillips is related to the complainant, either by affinity or consanguinity. The salesman stated that the purchaser desired to purchase the property involved and the adjoining vacant lot and that the owner of the vacant lot had agreed to sell at a price that the purchaser had agreed to pay. The salesman was informed of the impropriety of personally presenting an offer to the Court for acceptance and was advised to submit it to the attorney of record. It was assumed that this procedure was followed. There was no disclosure made at that time that the $500.00 earnest money had not been put up.

"The Title Guaranty and Trust Company, Trustee as proposed purchaser, being a quasi party, was before the Court, and Mr. Hon was present in open Court when the sale was confirmed.

\*　\*　\*　\*　\*　\*

"The final decree of July 10, 1961, entered nunc pro tunc July 13, 1961, binds the Title Guaranty and Trust Company to comply with the order of the Court, and the Court holds that the word 'Trustee' is surplusage.

"Execution will issue against the Title Guaranty and Trust Company for the purchase money and interest from July 10, 1961.

"The Court reiterates in this opinion what was stated previously from the bench: That the Title Guaranty and Trust Company will not be permitted to intervene in this cause so as to hold its principal and thereby further delay the sale, but will have the right to institute an independent action against its

client, Dr. Kimball. The proof showed the infant's property is in need of substantial repairs to make it yield a good return; that the infant has no funds available for making repairs, and the property continues to deteriorate.''

In the omitted portion of the above quoted opinion, the learned Chancellor cites authorities, some, if not all of which, are hereinafter referred to in this opinion. Following the Chancellor's opinion, which is incorporated in the decree, the decree orders:

''(1) That the motion of the Title Guaranty & Trust Company for leave to intervene and file cross bill be and same is hereby overruled.

''(2) That in accordance with the foregoing memorandum opinion the Title Guaranty & Trust Company is required to pay into court the sum of $14,000.00 cash, plus interest from July 10, 1961 and judgment is rendered against it for that amount and interest for all of which execution may issue.

''(3) Upon payment of the foregoing amount plus interest into court, the Clerk and Master is directed to follow the instructions given him under the court's decree enrolled on July 13, 1961, entered nunc pro tunc to July 10, 1961.

''(4) Costs incident to the motion by Title Guaranty & Trust Company are adjudged against said Title Guaranty & Trust Company, for all of which execution may issue.''

Thereafter, on November 7, 1961, the Title Guaranty & Trust Company filed exceptions to the Chancellor's decree entered October 27, 1961, which exceptions were

overruled by an order entered November 24, 1961. Thereafter, on December 19, 1961, said decree was amended by adding:

"To all of which action the Title Guaranty & Trust Company of Chattanooga duly excepted and now excepts and prays an appeal to the next term of the Court of Appeals at Knoxville, which appeal is granted upon the Title Guaranty & Trust Company of Chattanooga executing an appeal bond for costs within 30 days after the entry of this order, and otherwise perfecting its appeal within 60 days thereafter."

Said appeal was duly perfected and is now being disposed of by this opinion.

The Title Guaranty & Trust Company of Chattanooga has filed five assignments of error in this court. We deem it unnecessary to copy these assignments of error into this opinion, or to discuss them separately. They set out the appellant's objections to the Chancellor's decree holding appellant liable for the purchase price of the property, and refusing permission to withdraw the offer.

It is our opinion that the Chancellor ruled correctly in refusing to permit the Title Guaranty & Trust Company of Chattanooga to withdraw its offer, in entering judgment against it for the purchase price of the property involved, and in holding it liable in its individual or corporate capacity as agent for an undisclosed principal; but we think that he should have permitted the intervention of the Title Guaranty & Trust Company of Chattanooga as a party defendant and the filing by it of its cross bill against Dr. J. E. Kimball. This could have

been done without causing any delay in concluding the sale of the infant's property to the Title Guaranty & Trust Company of Chattanooga.

■ The offer which the Chancellor accepted was signed, "Title Guaranty & Trust Company of Chattanooga, Trustee"; but, as the offer was originally made and called to the attention of the Chancellor, no specification was therein made as to whom it was trustee for, nor of what the trust consisted. For that reason, we think the Chancellor was justified in ignoring the phrase "Trustee" on the signature, and holding the Title Guaranty & Trust Company of Chattanooga liable in its corporate capacity, as if it was making the offer for itself. The law applicable to this situation, with reference to the trust relationship of appellant, is stated in 54 Am.Jur.—Trusts—Sec. 33, page 44-45, as follows:

"Intention to create a trust and manifestation thereof, with reasonable certainty, are essential to the creation and existence of a trust."

■ The designation on the offer that it was made for and on behalf of Dr. J. E. Kimball was not added until after the Chancellor had accepted the offer. He had a right, in any event, to treat the offer as being made for an undisclosed principal, and, in that situation, to treat the agent as the principal. Appellant, by making the offer, had become a quasi party to the litigation. Even after the disclosure was made that appellant was acting for Dr. Kimball, the Chancellor still had the right, at his option, acting for and on behalf of the infant complainant, to hold either the agent of the formerly undisclosed principal or the principal, but not both of them. The law on this subject is stated in 2 Am.Jur.—Agency, sec. 402, page 314, as follows:

"It is settled that after a disclosure of the relation of agency, a creditor or claimant may at his option hold either the agent or his undisclosed principal liable."

On this subject, also, the Restatement of the Law,—Agency—section 197, says:

"The fact, however, that the principal directed the agent to make the contract in the principal's name or to reveal the principal's existence does not preclude liability upon a contract made by the agent in his own name."

Having become a quasi party to the lawsuit by making a bid or offer on property being judicially sold, it was highly improper for appellant to undertake to withdraw the offer without first obtaining permission of the court so to do, and, especially so, as appellant had no legal or valid ground for withdrawing its offer. Inasmuch as the property being sold belonged to an infant, there was a double duty on the part of the Chancellor to protect the infant's rights. The law on this subject is set out in Gibson's Suits in Chancery, 5th Ed. in section 678, as follows:

"A purchaser may have the sale set aside at any time before the title is vested in him and the term passed, if (1) the parties have no title to the property, or (2) if their title is seriously clouded, or (3) if the property is not such in quality, size, situation, character or value, as it was described to be, or (4) if from some want of necessary parties, or other fatal defect in the proceedings, or in the jurisdiction of the court, the sale would be void, or (5) if, for any other reason the purchaser would not get such a

title, or property of such quality, situation, dimensions or value, as he had a right to expect, or was authoritatively represented at, or before, the sale, or (6) if, after the sale and before confirmation, the property should be destroyed or otherwise be materially injured or greatly impaired in value.

"But a purchaser will not be relieved unless he apply in due season, and is unaffected by negligence or other inequitable conduct. If he buys, or allows the sale to be confirmed to him, with knowledge of the facts set out in his petition for relief, he will not be released.

"*There is one prevailing rule running through all our reports, and that is, the Court will not set aside, for irregularities merely, the sale of an infant's estate, where it is advantageous to the infant, provided the purchaser will get a good title.* (Emphasis added)."

The law on the subject of the obligations, rights and duties of a purchaser at a judicial sale was exhaustively covered and discussed in an opinion of this court, sitting en banc, written by Avery, J., now P. J. of the Western Section, in the case of Matthews v. Eslinger, 41 Tenn. App. 116, 292 S.W.(2d) 543. In that case, the appellant, R. R. Eslinger, had made the highest bid at a judicial sale conducted for the Chancery Court of Blount County by its Clerk and Master. His bid was $4,000. He asked for and obtained from the Clerk and Master a delay for the purpose of enabling him to make his financial arrangements to complete the sale, but after examination of the property, he decided he did not want it, and refused to comply with his bid. The Clerk and Master,

after notifying him that he would be held liable for any deficit if the property did not bring as much on a resale, as his bid, readvertised the property and sold it to the highest bidder at the resale for $2,800. A petition for citation for contempt of court was filed against Eslinger, which also prayed that judgment be entered against him for the deficit of $1,200 and the cost of readvertisement. The Chancellor held Eslinger in contempt of court and also entered judgment against him for the $1,200 deficit, plus the cost of readvertising, from which judgment Eslinger appealed. The Court of Appeals, in the opinion, concurred in by eight of the nine members of the Court, with the ninth member not participating, affirmed the decree of the Chancery Court on both aspects of the case. From the opinion written by Avery, J., we quote as follows:

"We hold that a bidder at a judicial sale made in our courts of chancery, who offers the highest bid and to whom the Clerk and Master has 'knocked down' the property so advertised for sale, thus accepting the bid, has made himself a party to the proceedings and subjects himself to the jurisdiction of the court, and that jurisdiction will be exercised so long as the control of the court over the cause and the parties continues. We also hold that whether the sale is confirmed to such a bidder and where such a bidder has not sought relief, by a proper petition or proceedings in the court to be relieved of his bid because of some fraud or mistake, such as failure of title, which would justify such relief, he is such a party to the original cause, as when it is made known to the court that he has failed to comply with his bid, he becomes a contemnor, subject to be dealt with by

petition, for contempt, and also a judgment for any deficiency in his bid and the amount at which the property is finally sold. Vanbibber v. Sawyers, 29 Tenn. 81; Mosby v. Hunt, 56 Tenn. 675; Deaderick v. Smith, 25 Tenn. 138; Reese v. Copeland, 74 Tenn. 190; Camp v. Riddle, 128 Tenn. 294, 295, 160 S.W. 844; State of Tennessee v. Quintard, 6 Cir., 80 F. 829, 835, 26 C.C.A. 165; Davis v. Mercantile Trust Co., 152 U.S. 590, 594, 14 S.Ct. 693, 38 L.Ed. 563; Kneeland v. American Loan Trust Co., 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379; Stuart v. Gay, 127 U.S. 518, 8 S.Ct. 1279, 32 L.Ed. 191; Blossum v. Milwaukee, etc., Railroad Company, 1 Wall. 655, 17 L.Ed. 673; Muse v. Donelson, 21 Tenn. 166, 169; Allen v. East, 63 Tenn. 308.

\* \* \* \* \* \*

"We emphasize the clause 'by his bid' because the bid when accepted by the master, subject alone to the approval of the court, is the first and binding step by the bidder making him a quasi party to the suit and thus subject to all actions of the court subsequently taken in the cause.

\* \* \* \* \* \*

"The court should not and will not permit interference with the orderly process of the court through its clerks or other officers in carrying out the terms and provisions of its decrees. To permit such tampering with the processes and procedure of the court as would authorize persons to bid at judicial sales who did not know whether they would comply with the terms of sale or not, unless on account of some legal reason seasonably pursued, would be opening the door to fraud and deceitful interference with

persons who might be present and interested in purchasing the property to be sold, and create a sentiment in the minds of the public which would destroy, not only the orderly procedure of such action in pending causes, but which would create a disrespect for the court itself.'' Matthews v. Eslinger, 41 Tenn. App. 126-128, 292 S.W.(2d) 548.

■ In the case of Matthews v. Eslinger, the sale was a public sale conducted by the Clerk and Master, whereas, in the instant case, the sale was a private sale made by the Chancellor, himself. The principle is the same, however, in our opinion; and, a fortiori, the Chancellor had both the right and the duty to protect the interest of the minor complainant whose land was being sold. In the instant case, as well as in the case of Matthews v. Eslinger, the question of contempt of court was involved; and, in our opinion, the Chancellor correctly held Mr. Charles O. Hon, Jr., President of the Title Guaranty & Trust Co. of Chattanooga, in contempt of court, and in administering a reprimand to him.

■ For the reasons hereinabove stated, we hold that the Chancellor's decree entering judgment against appellant, Title Guaranty & Trust Co. of Chattanooga, for $14,000, plus interest from July 10, 1961, must be affirmed. On the other hand, we think the Chancellor erred in denying the petition of Title Guaranty & Trust Company of Chattanooga to become a party defendant and to file its answer as a cross bill against Dr. J. E. Kimball. That need not have caused any delay in the proceedings for enforcement of the judgment against the Title Guaranty & Trust Company of Chattanooga. It would, however, have been in conformity with the equitable maxim, ''Equity delights to do complete justice, and not by

halves." From Gibson's Suits in Chancery, 5th Ed., sec. 47, we quote as follows:

"This maxim has grown out of the desire of the Chancery Court to so completely decide every matter involved in the litigation that there will be no roots of controversy left out of which other suits may spring."

Since this cause will be remanded to the Chancery Court of Hamilton County, for enforcement of the decree against the appellant, we can see no good reason why the answer and cross bill should not be filed and prosecuted to a conclusion against Dr. J. E. Kimball in that court, rather than to have the appellant forced to file a separate suit. To that extent only, the decree of the Chancellor will be modified.

With the modification hereinabove noted, permitting the appellant Title Guaranty & Trust Company of Chattanooga to file its answer and cross bill and prosecute same as a cross bill against Dr. J. E. Kimball, the decree of the Chancery Court of Hamilton County will be affirmed. A decree against appellant Title Guaranty & Trust Company of Chattanooga in the sum of $14,000, plus interest from July 10, 1961, may be entered in this court, after which the cause will be remanded to the Chancery Court of Hamilton County for enforcement of that decree, and for such other and further proceedings in this case as may be necessary or proper and not inconsistent with this opinion.

The costs of the appeal will be adjudged against the appellant, Title Guaranty & Trust Company of Chattanooga and its surety on the appeal bond.

Avery, (P. J. W. S.), and Carney, J., concur.